**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**ALISON ENDICOTT-QUIÑONES,**
**Guardian ad Litem, on behalf of**
**A. D., R. B., E. B., and M. B.,**
**minor children,**

        **Plaintiffs,**

**vs.**                            **No: 1:21-cv-00368 KG/JHR**

**PATRICIA GARZA, in her individual**
**and official capacity; REBECCA LIGGETT,**
**in her individual and official capacity; BRENDA**
**SALDANA, in her individual and official capacity;**
**NEW MEXICO CHILDREN YOUTH &**
**FAMILIES DEPARTMENT; and DOES 1-50,**

        **Defendants.**

<u>**DEFENDANTS' MOTION TO DISMISS**</u>

      COME NOW New Mexico Children, Youth and Families Department ("CYFD"), Patricia

Garza, Rebecca Liggett, and Brenda Saldana (collectively "Defendants"), by and through their

attorneys, Park & Associates, LLC (Alfred A. Park, Lawrence M. Marcus, and James J. Grubel),

and for their Motion to Dismiss state as follows:[1]

<u>**I. FACTUAL AND PROCEDURAL BACKGROUND**</u>

      Plaintiff Alison Endicott-Quinones filed suit on behalf of minors A.D., R.B., E.B., and M.B

("Children" or "Plaintiffs") on March 1, 2021.  The facts alleged in the lawsuit, assumed to be true

for the purposes of this Motion, are as follows: The Children were removed from their parents by

the local police and placed in the custody of CYFD beginning in June 2019, based on allegations

of neglect when the parents, foreign nationals, were observed panhandling in the parking lot of a

---

[1] Pursuant to Rule 7.1, Plaintiffs were contacted and indicated they oppose this Motion.

retail establishment. First Am. Compl. ("FAC") at ¶¶30, 31. The Children were adjudicated as "neglected" by a judge in the New Mexico Fifth Judicial District Court, and were then placed in foster care. Consequently, the parents were ordered to complete a parenting plan before the Children would be returned to their custody. FAC at ¶¶ 58, 59   In April 2020, the Children were sent to live with their parents for a trial home visit.  FAC at ¶149.   In April of 2020, the parents fled New Mexico with the Children. FAC at ¶¶ 159, 160.

The Complaint asserts that Defendants disregarded the constitutional rights and well-being of the Plaintiff children in "a concerted effort to get rid of their case." Id. at ¶ 2. Plaintiffs generally assert, without any supporting factual allegations,  that returning the Children to the physical care of their parents, despite the fact that a New Mexico Court had found that the parents had adequately completed a parenting plan, violated their rights because CYFD knew or should have known that the parents intended to "kidnap" them.  The first claim of relief set forth in the Complaint asserts that, by placing the children back in the care of their biological parents, CYFD violated the special relationship it had with Plaintiffs, thus violating their Fourteenth Amendment rights.  Count Two of the Complaint alleges that the Defendants created a dangerous situation by removing the Children from the safety of a foster parent home and returning them to the home of their biological parents.

In the first claim of relief, at issue here, Plaintiffs assert that Defendants "violated the duties created by the special relationship they had with Plaintiffs by, among other things, removing Plaintiffs from safe and appropriate foster homes and providing [the parents] with unsupervised access to Plaintiffs while Plaintiffs were still in CYFD's custody." FAC at ¶179. However,  at set forth below,  the Children were not in the *physical* custody of CYFD, so there was no special relationship as a matter of law.  Accordingly, Plaintiffs have not stated a claim upon which relief

can be granted under 42 U.S.C. § 1983 under a special relationship theory, so their first count should be dismissed. Moreover, even assuming, *ad arguendo*, that a special relationship existed between Defendants and Children, it was not clearly established, during any time relevant to the instant case, that such a relationship existed. As such, Defendants are entitled to qualified immunity.

In the Second claim of relief, Plaintiffs assert that Defendants "created a dangerous situation for Plaintiffs. They removed Plaintiffs from both parents' custody, placed them in a foster home, and then placed them in a trial home visit with just their father."[2] FAC at ¶196.  Plaintiffs also allege that in "[i]n April 2020, [Mother] was released from jail. Within days of her release from jail the parents kidnapped Plaintiffs and disappeared." Id. at ¶159.  However, because CYFD returned the Children to their biological parents and, the *status quo ante*, CYFD cannot be found to have created the danger.

## II. STANDARD OF REVIEW

### A.  Standard of Review for Motions For Judgment on The Pleadings

When evaluating a Motion to Dismiss for failure to state a claim or a Motion for Judgment of Dismissal on the Pleadings, the Court assumes the truth of all well-pleaded facts in the complaint, and draws reasonable inferences therefrom in the light most favorable to the plaintiff. See Dias v. City and County of Denver, 567 F.3d 1169, 1178 (10th Cir. 2009).  This assumption, however, is inapplicable when the complaint relies on a recital of the elements of a cause of action supported by mere conclusory statements. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

---

[2] The Complaint contains contradictory factual allegations in a vain attempt to establish that the Plaintiffs were not returned to the *status quo ante*.  For example, the Complaint alleges they were returned to just the father, but simultaneously asserts that the Children were sent to both the parents for a trial home visit.  These inconsistences are addressed below.

In addition, "[t]he court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted" under Rule 8(a)(2). Smith v. United States, 561 F.3d 1090, 1098 (10th Cir.2009) (internal quotation marks and citation omitted), cert. denied, 130 S.Ct. 1142, 175 L.Ed.2d 973 (2010).

The Supreme Court has clarified the Rule 12 standard, stating that "to withstand a motion to dismiss, a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'" Id. at 1247 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level," Twombly, 550 U.S. at 555, so that "[t]he allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008).  Under this standard, "a plaintiff must nudge his claims across the line from conceivable to plausible in order to survive a motion to dismiss." Smith, 561 F.3d at 1098. Therefore, a plaintiff must "frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." Robbins, 519 F.3d at 1247 (quoting Twombly, 550 U.S. at 556).

In analyzing the sufficiency of a complaint's allegations, courts look to two Supreme Court decisions, Twombly and Iqbal, which provide the determinative test for whether a complaint meets the requirements of Federal Rules of Civil Procedure 8(a)(2) and 12(b)(6) for assessing whether it is legally sufficient to state a claim for which relief may be granted. In Twombly, the Supreme Court considered a class action complaint alleging a conspiracy to restrain trade by communication carriers. 550 U.S. at 548-51. As previously noted, it held a complaint's "allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief."

4

Robbins, 519 F.3d at 1247. The Twombly Court explained this "does not impose a probability requirement at the pleading stage," but "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" misconduct required for relief. Id. at 556. As a result, the Court pointed out the complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Id. at 555 (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)). It concluded a "bare assertion" of the elements required to make a claim is not enough, but a claim needs "some further factual enhancement" to get it from "possibility" to the requisite "plausibility" required for relief. Id. at 556-57.

**B.  Standard of Review for Qualified Immunity**

Government officials who perform discretionary functions are entitled to the defense of qualified immunity from claims brought pursuant to 42 U.S.C.  § 1983 when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S.  800, 818, 102 S.Ct. 2727, 2738 (1982) (citing Procunier v. Navarette, 434 U.S. 555, 565, 98 S.Ct. 855, 861(1978); Wood v. Strickland, 420 U.S.308, 322, 95 S.Ct.992, 1001 (1975)).  If the law at the time of the alleged conduct is not clearly established, "an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful."  Harlow, 457 at 818, 102 S.Ct. at 2738.

Upon the filing of a motion to dismiss on the basis of qualified immunity, a plaintiff's response must meet a "heavy two-part burden; otherwise, the defendants are entitled to qualified immunity."  Holland ex rel. Overdorff v. Harrington, 268 F.3d 1179, 1186 (10thCir. 2001). Specifically, "[o]nce a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff ... [to] show that (1) the official violated a constitutional or statutory right; and (2) the

constitutional or statutory right was clearly established when the alleged violation occurred." Baumeister v. N.M. Comm'n for the Blind, 425 F.Supp.2d 1250, 1268 (D.N.M.  2006) (quoting Verdecia v. Adams, 327 F.3d 1171, 1174 (10thCir. 2003)).

The first prong of the qualified immunity analysis requires a determination of whether the facts as alleged state a claim for a constitutional violation.  Gomes v. Wood, 451 F.3d 1122, 1134 (10th Cir. 2006); Perez v. Elington, 421 F.3d 1128, 1131 (10th Cir. 2005)(quoting Mitchell v. Forsyth, 472 U.S. 511, 528, 105S.Ct. 2806, 2817 n.9 (1985)). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  Mobley v. McCormick, 40 F.3d 337, 340 (10thCir. 1994).  Sufficiency of a complaint is a question of law for this Court to decide, accepting as true all well-pleaded factual allegations, viewing those allegations in the light most favorable to the non-moving party, and drawing all reasonable inferences in Plaintiff's favor.  See Moore v. Guthrie, 438 F.3d 1036, 1039 (10thCir. 2006); Housing Auth. of Kaw Tribe v. City of Ponca City, 952 F.2d 1183, 1187 (10thCir. 1991).

The second prong of the qualified immunity analysis requires a determination of whether the right allegedly violated was clearly established at the time of the alleged unlawful conduct. Smith v. Cochran, 339 F.3d 1205 (10th Cir.  2003).   "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" Mullenix v. Luna, 136 S.Ct. 305, 308 (2015) (quoting Reichle v. Howards, 566 U.S.658, 664, 132 S.Ct. 2008, 2093 (2012)) (the constitutional rule applied must be "beyond debate").

"The law is clearly established when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as

plaintiff maintains." Roska v. Peterson, 328 F.3d 1230, 1248 (10th Cir. 2003) (citing Farmer v. Perrill, 288 F.3d 1254, 1259 (10thCir.2002)). "[T]he contours of the right must be sufficiently clear such that an objectively reasonable officer would understand that what she is doing violates that right." Id,328 F.3d at 1247 (citing Anderson v. Creighton, 483 U.S. 635, 639-40, 107 S.Ct. 3034,3039 (1987)).

In determining whether a defendant's conduct violated clearly established rights, the Court may consider only those decisions decided prior to the allegedly unlawful conduct in question. Stewart v. Donges, 915 F.2d 572, 581 (10th Cir.1990); Ashcroft v. al-Kidd, 563 U.S. 731, 741, 131 S.Ct. 2074, 2083 (2011) (precedent existing at the time of the challenged conduct must have placed the constitutional question beyond debate). "The plaintiff carries the burden of convincing the court that the law was clearly established." Pueblo Neighborhood Health Centers, Inc. v. Losavio, 847 F.2d 642, 645 (10th Cir.1988).

In meeting this burden "a plaintiff must do more than identify in the abstract a clearly established right and allege that the defendant has violated it." Romero v. Fay, 45 F.3d 1472, 1475 (10th Cir. 1995). In fact, while a right to some process may be clearly established, "the clearly established law must be 'particularized' to the facts of the case." Lee. V. Univ. of N.M., 2020 WL 1515381 at *42 (D.N.M. Slip Copy, March 30, 2020) (Browning, J.) citing White v. Pauly, 137 S. Ct. 548, 552 (2017).

"Because the doctrine of qualified immunity represents a balance that has been struck between competing values, 'the trial judge is burdened with a responsibility at an early stage, to make determinations of law based upon what the clearly established law governing the case was at the time of the challenged acts.'" Id., 847 F.2d at 646 (quoting Dominque v. Telb, 831 F.2d 673, 677 (6th Cir.1987)).

This Court has the discretion to decide which of the two prongs of the qualified immunity analysis to address first, "in light of the circumstances of the particular case at hand." Pearson v. Callahan, 555 U.S. 223, 236, 129 S.Ct. 808, 818 (2009).

**C.  Legal Standard for Special Relationship**

The Due Process Clause "generally confer[s] no affirmative right to governmental aid, even when such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 196 (1989). Similarly, "state actors are liable only for their own acts, and not the violent acts of third parties." Liebson v. New Mexico Corrections Dep't, 73 F.3d 274, 276 (10th Cir.1996). There are, however, two relevant exceptions to this general rule. First, "state officials can be liable for the acts of third parties where those officials 'created the danger' that caused the harm." Seamons v. Snow, 84 F.3d 1226, 1236 (10th Cir. 1996) (quoting Uhlrig v. Harder, 64 F.3d 567, 572 (10th Cir. 1995)). Second, "if the state restrains an individual's freedom to act to protect himself or herself through a restraint on that individual's personal liberty, the state may thereby enter into a 'special relationship' during such restraint to protect that individual from violent acts inflicted by others." Armijo v. Wagon Mound Pub. Schs., 159 F.3d 1253, 1261 (10th Cir. 1998).  Absent involuntary restraint, however, no duty to protect arises under the special-relationship theory. Armijo, 159 F.3d at 1261.

**D.  Legal Standard for Danger Creation**

As stated above, "state officials can be liable for the acts of third parties where those officials 'created the danger' that caused the harm." Seamons v. Snow, 84 F.3d 1226, 1236 (10th Cir. 1996) (quoting Uhlrig v. Harder, 64 F.3d 567, 572 (10th Cir. 1995)). This "danger creation" exception to the general rule applies only when a state actor "affirmatively acts to create, or increases a plaintiff's vulnerability to, danger from private violence." Currier v. Doran, 242 F.3d

8

905, 923 (10th Cir.2001). To state a *prima facie* case, the plaintiff must show that (1) state actors created the danger or increased the plaintiff's vulnerability to the danger in some way, (2) the plaintiff was a member of a limited and specifically definable group, (3) the defendants' conduct put the plaintiff at substantial risk of serious, immediate, and proximate harm, (4) the risk was obvious or known, (5) the defendants acted recklessly in conscious disregard of that risk, and (6) the conduct, when viewed in total, shocks the conscience. Ruiz v. McDonnell, 299 F.3d 1173, 1182–83 (10th Cir.2002); Robbins v. Oklahoma, 519 F.3d 1242, 1251 (10th Cir. 2008). The danger creation theory focuses on the affirmative actions of the state in placing [an individual] in harm's way. Currier v. Doran, 242 F.3d 905, 919 (10th Cir.2001).

Under a danger creation theory, there is no § 1983 liability absent "an intent to harm" or "an intent to place a person unreasonably at risk of harm." Uhlrig v. Harder, 64 F.3d at 573. A plaintiff must show "sufficient[ ] 'affirmative conduct on the part of the state in placing the plaintiff in danger.' " Estate of B.I.C. v. Gillen, 702 F.3d at 1187 (quoting Gray v. Univ. Colo. Hosp. Auth., 672 F.3d at 916). In determining whether the danger creation exception applies, the Tenth Circuit has focused on the deliberateness of the conduct in relation to the caused harm. See Christiansen v. City of Tulsa, 332 F.3d at 1281. The defendant must recognize the unreasonableness of the risk of the conduct and act "with an intent to place a person unreasonably at risk." Medina v. City & Cty. of Denver, 960 F.2d 1493, 1496 (10th Cir.1992), overruled on other grounds by Morris v. Noe, 672 F.3d 1185 (10th Cir.2012). The intent to place a person unreasonably at risk is present where the defendant "is aware of a known or obvious risk" creating a high probability that serious harm will follow, and the defendant nonetheless proceeds with a "conscious and unreasonable disregard of the consequences." Medina v. City & Cty. of Denver, 960 F.2d at 1496.

**E.  <u>Legal Standard for Conscience Shocking</u>**

A government actor's official conduct intended to injure in a way that cannot reasonably be justified by any government interest most likely shocks the conscience. See <u>Cty. of Sacramento v. Lewis, 523 U.S. 833</u>, 849, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) ("[C]onduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level."). "[A] plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power." <u>Camuglia v. City of Albuquerque</u>, 448 F.3d 1214, 1222 (10th Cir.2006) (quoting <u>Moore v. Guthrie</u>, 438 F.3d 1036, 1040 (10th Cir.2006)) (internal quotation marks omitted). "The plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." <u>Camuglia</u> at 1222–23 (quoting <u>Uhlrig v. Harder</u>, 64 F.3d at 574) (internal quotation marks omitted).

> Establishing these limits advances "three basic principles highlighted by the Supreme Court in evaluating substantive due process claims: (1) the need for restraint in defining their scope; (2) the concern that § 1983 not replace state tort law; and (3) the need for deference to local policymaking bodies in making decisions impacting upon public safety."

<u>Camuglia v. City of Albuquerque</u>, 448 F.3d at 1223 (quoting <u>Uhlrig v. Harder</u>, 64 F.3d at 574).

"Whether the conduct shocks the conscience is an objective test, based on the circumstances, rather than a subjective test based on the government actor's knowledge." <u>Pena v. Greffet</u>, 922 F.Supp.2d at 1227 (citing <u>James v. Chavez</u>, 830 F.Supp.2d 1208, 1276 (D.N.M.2011) (Browning, J.) (finding that the use of deadly force did not shock the conscience even if the suspect did not have an intent to harm the officer, because the officer "had sufficient facts before him to conclude that there was a threat of serious physical harm" and the "courts must evaluate a [government actor's] conduct objectively"), <u>aff'd</u>, 511 Fed.Appx. 742 (10th Cir.2013)).

## II. ARGUMENT

**A. Plaintiffs cannot maintain a cause of action for violation of the Fourteenth Amendment because there was no special relationship.**

Plaintiffs cannot meet their heavy burden of demonstrating that CYFD's conduct violated their Fourteenth Amendment rights.  More specifically, courts have found that there is no special relationship when children in the legal custody of the state are placed in the physical custody of their biological parents, as CYFD would lack the necessary ability to physically restrain the children.  Accordingly, Plaintiffs fail to sufficiently state a §1983 claim for a constitutional deprivation and the first claim for relief must be dismissed for failing to state a claim based upon qualified immunity.  Holland, 268 F.3d at 1186; Baumeister, 425 F.Supp.2d at 1268.

1. There is no evidence of the requisite restraint

Plaintiffs' focus on CYFD retaining legal custody to support the creation of a special relationship is misplaced.  The fundamental element that establishes a special relationship is whether the state restrains an individual's freedom to protect himself.  In Armijo, the Tenth Circuit explained that, if a state restrains an individual's freedom to protect himself, "the state may thereby enter into a 'special relationship' during such restraint to protect that individual from violent acts inflicted by others." 159 F.3d at 1261 (emphasis added).  Here, the allegations of the Complaint do not constitute a restraint on the Children, but rather a lack of restraint on their biological parents. Moreover, the Complaint asserts that one of the Children was harmed in North Carolina.  FAC at ¶ 167. Because the Complaint alleges that Defendants had no control over the location of the Plaintiffs after April 2020, Defendants could not exercise any restraint over Plaintiffs and, therefore, there can be no special relationship.

Even when assumed to be true, the facts alleged in the Complaint do not support a claim for the creation or breach of a special relationship.  Plaintiffs argue that "Defendants violated the duties created by the special relationship they had with Plaintiffs by, among other things, removing Plaintiffs from safe and appropriate foster homes and providing [Father] and [Mother] with access to Plaintiffs and the opportunity to kidnap Plaintiffs while Plaintiffs were still in CYFD's custody.  FAC at ¶179.  Plaintiffs also assert that Defendants "had not formally transferred physical or legal custody of the Plaintiffs back to the parents.  Id. at ¶180.  Plaintiffs' allegation is a futile attempt to avoid the implications between legal and physical custody. Even read in a light most favorable to Plaintiffs, they were transferred to the home of their parents.  There is no legally sustainable argument that they were not in the physical control and custody of their parents once placed on the trial home visit.  Indeed, if they were not under the parents' control, the Children could not have been removed from the state.

Plaintiffs also assert that Defendants took affirmative actions in furtherance of their scheme [to return the Plaintiffs to their parents]. Id. at ¶184.  Further, Plaintiffs contend that Defendants allegedly breached the duty imposed by the special relationship by hindering efforts by Hobbs police officers to gather information on the children in an effort to locate them. Id. at ¶161.  Moreover, the Complaint contends that Defendants breached their duties imposed by the special relationship by failing to immediately report the children missing and permitting the issuance of an Amber Alert.  FAC at ¶161.  Quite simply, despite asserting multiple facts that are immaterial to their claims, Plaintiffs contend that CYFD failed to exercise control over the Children's location.[3]  Plaintiffs assert that "CYFD maintained physical custody at all material times by

---

[3] The First Amended Complaint cites to examples of state law that Plaintiffs assert create a duty for Defendants to protect Plaintiffs.  See, e.g. First Am. Compl. at ¶¶ 26, 27.  However, a violation of state law does not, in itself, give rise to a § 1983 claim. See, e.g., Robison v. Via,

placing the children in foster care and tasking CYFD employees, including Saldana, to provide essential personal care to Plaintiffs including, but not limited to, cooking meals for them, bathing them, getting them ready for bed and transporting them to and from school, and other essential appointments."   FAC at ¶ 57.   This assertion, despite being a legal conclusion not requiring deference to its truthfulness,  is insufficient to establish there was a special relationship, much less a breach of this relationship.  Twombly at 555.

None of the facts alleged in Plaintiffs' First Amended Complaint support the conclusion that Plaintiffs were restrained or that any restraint rose "to the same level of involuntary restraint as arresting, incarcerating, or institutionalizing an individual." Armijo at 1261.  Defendants did not have day-to-day physical control of the Children's ability to satisfy their basic needs; that was the role of the biological parents.  Bathing and transporting a child on occasions does not rise to the requisite level of restraint.   Moreover, these allegations are precluded by the fact that the Children were injured when they were outside New Mexico.  There are no allegations supporting CYFD provided care in any form to the Children outside of the state and the injuries did not occur during a time of restraint.

### 2. CYFD's legal custody of Plaintiffs does not create a special relationship.

The fact that Defendants did not have physical custody of the children resulting in the lack of physical control and restraint, is dispositive.  Indeed, Judge Armijo of the Federal District of New Mexico, in a factually similar but more egregious case, found there was no special relationship when CYFD, who retained legal custody, placed children in the physical custody of

---

821 F.2d 913, 922 (2d Cir.1987) (violation of state law neither gives plaintiff a § 1983 claim, nor deprives defendants of the defense of qualified immunity); see also Davis v. Scherer, 468 U.S. 183, 197 & n. 11, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984).

their biological father.  Hernandez v. Rapp, No. CV 00-1456 MCA/WDS, 2003 WL 27385396, at *1 (D.N.M. Mar. 31, 2003).

In Hernandez, the children's father, Ralph Hernandez, beat and shot at their mother, Dora Hernandez, in the presence of the children.  Ralph Hernandez was subsequently arrested, convicted of aggravated assault with a deadly weapon, and given a four-year prison sentence.  Id. at *2. CYFD thereafter took physical and legal custody of the children.   While the father was incarcerated, no action was taken to terminate the parental rights of Ralph and Dora Hernandez or to ensure that the Hernandez children would be adopted during this period.  Eventually, the father was released from prison.  While the Hernandez children remained in the legal and physical custody of CYFD, CYFD employees began receiving information that the father had started drinking alcohol again, and they knew this information meant that the children would be in imminent danger of serious harm if placed in his custody.  Nevertheless, CYFD employees approved and facilitated the delivery of all six Hernandez children to the physical custody of Ralph Hernandez.  Id. at *3.

Later, a CYFD employee conducted a cursory investigation of the Hernandez family, which resulted in a memorandum that vouched for Ralph Hernandez's parenting abilities and discounted or omitted information from other sources indicating that the children were in jeopardy. CYFD then used the report to justify relinquishing CYFD's legal and physical custody of the children to their father.  Id.  The Children's Court granted the father both legal and physical custody of the children.   The children would eventually be again removed because of sexual abuse perpetrated by the father on them.  Id.

In Hernandez, the plaintiffs asserted that CYFD retained legal custody of the Hernandez children during part of the time they were abused by their biological father.  Id. at *10.  Judge

Armijo found that these allegations were insufficient to maintain a cause of action under the special relationship theory and found dispositive the fact that the children were placed with a biological parent, as opposed to a foster parent.  Id.  Specifically, Hernandez found:

> A different situation is presented by relinquishing the physical custody of a child to a parent whose biological relationship and legal rights with respect to that child precede any intervention by the State on the child's behalf. In this situation, the fact that the State retains legal custody of the child is not sufficient to establish a "special relationship" for purposes of asserting a claim under the substantive component of the Due Process Clause. Legal custody without day-to-day physical control of a child's ability to satisfy his or her basic needs is more akin to the mere undertaking or proclamation of intent to protect a child, which the Supreme Court found insufficient to establish such a special relationship in DeShaney, 489 U.S. at 197-98, or to the limited custodial responsibilities imposed by state compulsory school-attendance statutes, which the Tenth Circuit found insufficient to establish such a relationship in Maldonado v. Josey, 975 F.2d 727, 732-33 (10th Cir. 1992), Seamons, 84 F.3d at 1235-36, and Armijo, 159 F.3d at 1261-62.

> Hernandez at * 10-11.

In Hernandez, the defendants failed to investigate the father's alleged alcohol abuse, as well as allegations that the father was physically abusing the children.  The court in Hernandez found that, "[l]egal custody without day-to-day physical control of a child's ability to satisfy his or her basic needs is more akin to the mere undertaking or proclamation of intent to protect a child, which the Supreme Court found insufficient to establish such a special relationship in DeShaney, 489 U.S. at 197-98." Hernandez at *10.

The same reasoning applies here, where the crux of Plaintiffs' argument is that CYFD failed to ensure that the children were kept safe from their parents.  Plaintiffs allege that CYFD retained legal custody of them, but that they were placed in the physical custody of their biological parents, or at least initially with just the Father.  Pursuant to the reasoning of Hernandez, legal custody is insufficient to establish that a special relationship existed.  The dispositive factor is the physical control and restraint exercised by CYFD.  At its essence, the Complaint asserts that the

failure to restrain the parents was the cause of injuries to the Children.  That failure to restrain does not support a claim for a breach of a special relationship.

The Eleventh Circuit employed similar reasoning when it dismissed a substantive due-process claim under circumstances "where a public agency is awarded legal custody of a child, but does not control that child's physical custody except to arrange court-ordered visitation with the non-custodial parent." Wooten v. Campbell, 49 F.3d 696, 699 (11th Cir. 1995). In particular, the Eleventh Circuit rejected the analogy to a foster care situation and instead analogized the situation of private physical custody and state legal custody to the circumstances presented in DeShaney and Maldonado. See Wooten, 49 F.3d at 699-701.

Further, this matter is likewise distinguishable from a case in which CYFD placed a child with a foster parent and that child is subsequently harmed.  The foster parent is licensed and controlled by CYFD.  The child, whether placed voluntarily or involuntarily, is dependent on the state, by means of its agent foster parent, for basic needs.  When a child is placed with a biological parent, state control is lacking.   Hernandez specifically distinguished biological and foster parents. Moreover, DeShaney noted that the Supreme Court might have ruled differently had the issue at bar been abuse by a foster parent rather than a failure to remove a child from an abuse biological parent.  The Supreme Court reasoned:

> Had the State by the affirmative exercise of its power removed Joshua from free society and placed him in a foster home operated by its agents, we might have a situation sufficiently analogous to incarceration or institutionalization to give rise to an affirmative duty to protect. Indeed, several Courts of Appeals have held, by analogy to Estelle and Youngberg, that the State may be held liable under the Due Process Clause for failing to protect children in foster homes from mistreatment at the hands of their foster parents.

DeShanney, 489 U.S. 189, 201, n. 9, 109 S. Ct. 998, 1006, 103 L. Ed. 2d 249 (1989)

Lastly, to the extent that the Complaint alleges facts claiming CYFD had knowledge that the biological parents posed a danger to Plaintiffs, this is irrelevant.  The Tenth Circuit has held

that the defendants' knowledge of a risk of harm to the plaintiff was "not relevant to the determination of whether a special relationship existed." <u>Armijo By & Through Chavez v. Wagon Mound Pub. Sch.</u>, 159 F.3d 1253, 1262 n.5 (10th Cir. 1998).   Likewise, the allegations that Defendants knew the parents would flee or otherwise posed a danger, even if assumed to be true, is a red-herring and does not establish there was a special relationship.

**B.   Plaintiffs' allegation of danger creation fails because they were placed back in the custody of their biological parents.**

Plaintiffs cannot meet their heavy burden of demonstrating that CYFD's conduct violated their Fourteenth Amendment rights and fail to allege facts that would support all of the required elements of danger creation. Plaintiffs allege that "Defendants acted recklessly and in conscious disregard of the known risks the trial home visit posed for Plaintiffs. Even after the risk came to pass, Plaintiffs were kidnapped, Defendants continued to act recklessly by refusing to timely report the children missing and refusing to tell the Hobbs Police Department that their custodial rights were being interfered with."   <u>FAC</u> at ¶¶ 205, 206.   This allegation, even assumed true, is insufficient to rise to the level of being conscience shocking.   Plaintiffs allege that the alleged actions of Defendants were done recklessly and in disregard.   At most, this might meet the fourth element of establishing danger creation. However, this alone is simply does not rise to the level of conscious shocking and is foreclosed by <u>Camuglia</u>.

Moreover, the facts here are similar to those of <u>DeShanney,</u> where the United States Supreme Court found there was no due process violation when the state took a child from an abusive father and later returned the child to that abusive parent.  The United States Supreme Court held that because "the State once took temporary custody of [the child] does not alter the analysis, for when it returned him to his father's custody, it placed him in no worse position than that in which he would have been had it not acted at all; the State does not become the permanent

guarantor of an individual's safety by having once offered him shelter. Under these circumstances, the State had no constitutional duty to protect [the child]." <u>DeShaney v. Winnebago Cty. Dep't of Soc. Servs.</u>, 489 U.S. 189, 201, 109 S. Ct. 998, 1006, 103 L. Ed. 2d 249 (1989). "While the State may have been aware of the dangers that [the child] faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them." <u>Id</u>. at 201, 109 S.Ct. 998. The Court noted that "[t]he most that can be said of the state functionaries in this case is that they stood by and did nothing when suspicious circumstances dictated a more active role for them." <u>Id</u>. at 203, 109 S.Ct. 998.

Similarly, Plaintiff asserts that the Children were taken from their parents on June 3, 2019 after observations determined they were in poor health. <u>FAC</u> at ¶¶ 29, 42. The Children were removed from their biological parents and placed into CYFD custody. <u>Id</u>. at ¶ 42. The Parents were arrested and subsequently prosecuted for child abuse. <u>Id</u>. at ¶ 53. The Children were placed in foster homes shortly after CYFD took them into custody. <u>Id</u>. at ¶ 58. In April 2020, Garza, Saldana, and Doe Defendants sent the Children to live at their father's home on a trial home visit. <u>Id</u>. at ¶ 149.

At its core, the Complaint asserts that the Children were removed from their parents and then later returned to the parents. While the Complaint asserts other facts in an apparent attempt to show conscience shocking behavior, that is all irrelevant to whether Defendants created a danger for the Children. The law is clear that Defendants did not create a danger by returning the Children to their parents, even if they knew the parents posed a threat to the safety of the Children. To hold otherwise would be turning Defendants into the guarantors of the Children's safety. This theory of liability is explicitly rejected by <u>DeShaney</u>. Accordingly, because the Children were returned

to their parents and the *status quo ante*, Defendants cannot be liable for damages suffered by the Children because new or enhanced dangers were not created.

Similarly, in Currier, two young children were removed from their mother's home and a court granted legal custody to the State. 242 F.3d at 909. The court then gave the father physical custody, and later legal custody, despite knowledge on the part of social workers that the father regularly failed to pay child support and was likely to be an inadequate caregiver. Id. During the father's custody of the children, social workers received repeated reports of abuse from the children's mother, but no steps were taken to end the father's custody. Id. at 909–10. Ultimately, one of the children died of burns after his father poured boiling water over him. Id. at 910. The plaintiffs brought claims against three social workers who had been assigned to the case; each asserted qualified immunity. Id. at 908.

The Tenth Circuit held that a social worker had not committed a constitutional violation because the social worker's failures occurred only after the children were in the father's legal custody. Id. at 920. Thus, he had not created any danger and he had "no constitutional duty to rescue the children," even assuming that he knew that other actors had created a danger to the children and he had "a clear opportunity to rescue [them]." Id. at 921.

A second social worker, Doran, was sued because he was responsible for the state court's award of custody to the father and because of "various allegations as to [his] involvement after legal custody was awarded to [the father.]" Currier, 242 F.3d at 919. The Tenth Circuit rejected qualified immunity for Doran with respect to his role in placing the children with the father because his assistance in their placement did create a danger to the children. Id. at 919–20. The Tenth Circuit distinguished DeShaney because *the state had not returned the children to the same person*

*(the children's mother) from whom it had taken custody.* Here, the Children were returned to the parents from whom they were removed.  Accordingly, Defendants did not create the danger.

Plaintiffs Complaint attempts to avoid the application of <u>DeShaney</u> by asserting that CYFD did not simply return the Children to the *status quo ante*.  Plaintiffs assert that the Children were placed in the home of just their father as opposed to both parents.  However, this assertion is immaterial, because  Plaintiffs also aver that the mother was released from jail and within days of the release the parents kidnapped Plaintiffs and disappeared. <u>FAC</u> at ¶ 159.  First, Plaintiffs admit that the kidnapping did not take place until the mother came  home, and also admit that the mother participated in the kidnapping. Thus, the kidnapping was not proximately caused by the fact that the Children were returned to the father alone.  Further, Plaintiffs admit the mother was in jail at the time the Children were initially placed with the father.  Even if CYFD had not taken custody of the Children in the first place, the fact that the mother was incarcerated meant that the father would have been the only parent having physical custody regardless of CYFD's intervention.  Even when assumed to be true, the alleged facts do not support a claim that Defendants created a danger.

### C. Defendants are entitled to qualified immunity, as it was not evident that placing children back with their biological parents violated a clearly established statutory or constitutional right when the alleged violation occurred.

Even assuming that Plaintiffs have stated a plausible claim that Defendants committed any constitutional violations within the pleadings, Defendants are still entitled to qualified immunity. When targeted by an action brought under 42 U.S.C. § 1983, a government official can assert the defense of qualified immunity. When acting in the scope of their duties, "officials 'are shielded from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  <u>Davis v. Scherer</u>, 468 U.S. 183, 191, 104 S. Ct. 3012, 3017 (1984), citing <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818, 102 S. Ct. 2727, 2739 (1982).

The second prong of the qualified immunity analysis requires a determination of whether the right allegedly violated was clearly established at the time of the alleged unlawful conduct. Smith v. Cochran, 339 F.3d 1205 (10th Cir. 2003). "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" Mullenix v. Luna, 136 S.Ct. 305, 308 (2015) (quoting Reichle v. Howards, 566 U.S. 658, 664, 132 S.Ct. 2008, 2093 (2012)) (the constitutional rule applied must be "beyond debate"). The pleaded facts simply fail to show that Defendants' conduct violated a clearly established law of which a reasonable person would have known. See Pueblo Neighborhood Health Ctrs. v. Losavio, 847 F.2d 642, 646 (10th Cir. 1988).

1. There was no clearly established right that placing the Children back with their parents violated duties created by a special relationship.

Plaintiffs cannot establish that their actions violated a clearly established right because case authority does not support a finding that CYFD's retention of legal custody is sufficient to establish a special relationship. In Hernandez, the court found that the defendants were entitled to qualified immunity because it was not clear that the children plaintiffs' rights were violated by virtue of a breach of the special relationship. Hernandez at *10. Other courts have similarly held that "legal custody without physical custody is insufficient to create a 'special relationship." Briggs v. Oklahoma ex rel. Oklahoma Department of Human Services, 472 F.Supp.2d 1294 (W.D.Okla.2007); A.M. ex rel. Youngers v. New Mexico Dep't of Health, 65 F. Supp. 3d 1206, 1232 (D.N.M. 2014); A.S. v. Tellus, 22 F.Supp.2d 1217, 1221 (D.Kan.1998); e.g., Wooten v. Campbell, 49 F.3d 696 (11th Cir.1995) (no special relationship where state has legal custody, mother has physical custody, and child injured by natural father); Clark v. City of Philadelphia, 2006 WL 2321574 (E.D.Pa. Aug. 8, 2006) (absent physical custody, no special relationship exists).

21

Multiple courts have held that legal custody without physical custody is insufficient to create a special relationship. Therefore, Plaintiffs cannot cite to any decision or authority that would have put Defendants on notice that any of the conduct alleged to have occurred violated the Fourteenth Amendment. <u>Pueblo Neighborhood</u>, 847 F2d at 645 (plaintiff bears burden of convincing court that the law was clearly established). Accordingly, all of the Defendants named in their individual capacities are entitled to qualified immunity and to dismissal of the first claim for relief.

> 2. <u>There was no clearly established right that placing the Children back with their parents created a danger.</u>

Plaintiffs cannot establish that their actions violated a clearly established right because case authority does not support a finding that CYFD's return of the Children to their biological parents for a trial home visit is sufficient to establish that Defendants created a danger that harmed the Children. Indeed, as noted above, case authority, including <u>DeShanney</u> and <u>Currier</u>, require a finding that Defendants did not create a danger to the Children by returning them to the parents from whom they were removed.

WHEREFORE, Defendants respectfully request that the Court enter an order dismissing with prejudice Plaintiff's First Amended Complaint for failure to state a claim, or alternatively, based on qualified immunity, and for such further relief as the Court deems appropriate.

Respectfully Submitted:

PARK & ASSOCIATES, LLC


By  /s/ James J. Grubel
Alfred A. Park
Lawrence M. Marcus
James J. Grubel
3840 Masthead Street, N.E.
Albuquerque, NM 87109
505-246-2805 ext. 104
jgrubel@parklawnm.com
*Counsel for Defendants*

I hereby certify that a true and correct

copy of the foregoing was served via
CM/ECF filing system to all counsel
of record on this  20th day of August, 2021.


/s/ James J. Grubel
James J Grubel