IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ALISON ENDICOTT-QUIÑONES,
Guardian ad Litem, on behalf of
A. D., R. B., E. B., and M. B.,
minor children,

        Plaintiffs,

vs.                                                     No. 21-cv-00368 DHU/JHR

PATRICIA GARZA, in her individual
and official capacity; REBECCA LIGGETT,
in her individual and official capacity; BRENDA
SALDANA, in her individual and official capacity;
and DOES 1-50,

        Defendants.

**PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

        Plaintiffs reply as follows to Defendants' opposition to Plaintiffs' motion for leave to amend. As explained below, none of Defendants' objections are well-taken. Accordingly, the motion should be granted.

    **A. The Court should Decline Defendants' Invitation to Engage in a Futility Analysis.**

        Defendants' arguments against Plaintiffs' motion are grounded in a claim of futility. But Defendants' arguments are best addressed on a motion to dismiss, and as such, the Court should grant Plaintiffs' motion.

        "It is within the court's discretion to decline to engage in a futility analysis in the context of a motion to amend if the court determines the futility arguments would be more properly addressed in dispositive motions." *Complete Merch. Sols., LLC v. Fed. Trade Comm'n*, 2020 WL 4192294, at *3 (D. Utah July 21, 2020). *See also*, *id*. at 4 ("declin[ing] to engage in a futility analysis" and granting leave to amend because "[t]he FTC does not assert any other grounds for denial of leave to amend."). That approach is especially favored where a "[d]efendant relies on the arguments raised in [a] Motion to Dismiss." *Obeslo v. Great-W. Capital Mgmt., LLC*, 2017 WL

1

10591604, at *3 (D. Colo. Feb. 21, 2017), report and recommendation adopted, *Obeslo v. Great-W. Capital Mgmt., LLC*, 2017 WL 10591349 (D. Colo. Mar. 14, 2017). *See also*, *Gen. Steel Domestic Sales, LLC v. Steelwise, LLC*, 2008 WL 2520423, at *4 (D. Colo. June 20, 2008) (motion for leave to amend granted where a "futility argument seems to place the cart before the horse. Rather than force a Rule 12(b)(6) motion into a Rule 15(a) opposition brief, the defendants may be better served by waiting to assert Rule 12 motions until the operative complaint is in place."). Courts are also reluctant to rule on issues of futility absent a showing of prejudice by the opposing party. *Stender v. Cardwell*, 2011 WL 1235414, at *3 (D. Colo. Apr. 1, 2011) ("Because Defendants do not argue they face any—let alone undue—prejudice if the Court grants Plaintiffs leave to file their Amended Class Action Complaint, their opposition to the instant motion is grievously weakened.").

      Here, Defendants' response is a textbook example of why courts disfavor amendment oppositions predicated on futility. Defendants' response is truncated and, in large part, simply incorporates by reference earlier pleadings with minimal analysis. Defendants' arguments are more appropriately made, and responded to, in a Rule 12(b)(6) motion filed after the Proposed Second Amended Complaint (Dkt. No. 39-1, the "Proposed SAC") is in place. That is especially true given Defendants' total failure to identify, much less establish, any undue prejudice the amendment will cause. Defendants' cursory assertion that the Proposed SAC's filing will be "prejudicial," Def. Resp. at 10, will not suffice. *See, e.g.*, *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1208 (10th Cir. 2006) ("Courts typically find prejudice only when the amendment unfairly affects the defendants in terms of preparing their defense to the amendment."). Finally, courts in this Circuit encourage plaintiffs to file for leave to amend while motions to dismiss are pending adjudication. *See, e.g., De Gomez v. Adams Cnty.*, 2022 WL 1439113, at *4 (D. Colo. May 6, 2022) ("Plaintiff could have sought amendment of the Complaint while Wellpath's motion to dismiss was pending, particularly given that the alleged deficiencies as to Wellpath were outlined in Wellpath's motion to dismiss[.]").

For all the above reasons, the Court should decline to engage in the futility analysis requested by Defendant, and grant Plaintiffs' motion.

**B. The Proposed Complaint Amendment States a Claim under the Tort Claims Act.**

Defendants contend that their alleged misconduct does not fall within any of the New Mexico Tort Claims Act's ("TCA") sovereign immunity exceptions. Defendants are incorrect.

Subsection A of Section 41–4–4 NMSA 1978 waives sovereign immunity for "liability for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any building[.]" *Young v. Van Duyne*, 2004-NMCA-074, ¶ 14, 135 N.M. 695, 700. The New Mexico Supreme Court has interpreted this provision broadly. *Johnson ex rel. Estate of Cano v. Holmes*, 455 F.3d 1133, 1139 (10th Cir. 2006) (discussing *Upton v. Clovis Mun. Sch. Dist.*, 137 N.M. 779, 115 P.3d 795, 797 (Ct.App.2005)). Indeed, "ownership of the property in question [is] not critical[.]" *Young v. Van Duyne*, 2004-NMCA-074, ¶ 21, 135 N.M. 695, 702, 92 P.3d 1269, 1276. Rather, the inquiry is instead whether "the agency was in some respects 'driving the bus[.]'" *Cobos v. Dona Ana Cnty. Hous. Auth.*, 1998-NMSC-049, ¶ 12, 126 N.M. 418, 424, 970 P.2d 1143, 1148. Thus, the TCA waiver applies where CYFD's exercises "control over the foster home[.]" *Faulkner v. New Mexico Children, Youth & Families Dep't*, 2016 WL 10588127, at *11 (D.N.M. Mar. 7, 2016)

As alleged in the Proposed SAC, Defendants made the decision to move Plaintiffs to an apartment where their biological father resided for a trial home visit. Defendants made that decision even though they knew that the father was unable to care for his children and was likely violent. Proposed SAC at ¶¶ 33, 68-73, 115. Moreover, once the trial home visit started, Defendants exercised control over the apartment. The Proposed SAC alleges that Defendants continued to provide essential services to Plaintiffs, assisted the father in staging the apartment to dupe the abuse & neglect court, and provided him with advance notice of purportedly unannounced visits. Proposed SAC at ¶¶ 117-18 Finally, up until the moment Plaintiffs were kidnapped,

3

Defendants retained full control over where Plaintiffs would reside. Proposed SAC at ¶¶ 128, 143-144.

Under *Young*—the principal authority relied on by Defendants—that is enough to state a claim. In *Young*, the New Mexico Court of Appeals held that the public building TCA waiver applied where "CYFD knew or should have known, *before [an] adoption*, of [a child's] violent and uncontrollable tendencies and failed to disclose them to the [foster parents]." 2004-NMCA-074, ¶¶ 22-23. The court reasoned that "control over the Youngs' home" prior to the finalization of the adoption may have "constituted operation of a building[.]" *Id*. at ¶ 22 (quotations omitted) (emphasis added). Conversely, the court ruled that "no fact Plaintiff has alleged or argued, can support his position that, *after the adoption was final*, CYFD was operating the home." *Id.* at ¶ 30 (emphasis added).

The present matter is, for all intents and purposes, the flip of *Young*. Instead of placing a dangerous child with a vulnerable foster parent, Defendants sent Plaintiffs to live with a dangerous caretaker. That the caretaker was Plaintiffs' biological father makes no difference. As alleged in the Proposed SAC, no rights were *ever* granted to the father. Proposed SAC at ¶¶ 128, 143-144.

Defendants attempt to avoid this result by claiming that "the harm did not take place in the [biological father's] home," and rather "occurred months after the Plaintiffs left New Mexico." Def. Resp. at 6. What Defendants ignore, though, is that they *created* the opportunity for Plaintiffs' father to kidnap them. Had Defendants not left Plaintiffs alone with their biological father, he could not have waltzed off with them. Indeed, the father tried to kidnap Plaintiffs earlier doing a supervised visit at CYFD's office—an attempt that failed because the police were called. Proposed SAC at ¶ 54. By sending Plaintiffs to live at the father's apartment on a trial home visit, they essentially invited the father to kidnap them. In fact, the Proposed SAC alleges that Defendants hoped Plaintiffs would disappear. Proposed SAC at ¶ 164.

A kidnapping where CYFD maintained their custodial rights for Plaintiffs is hardly analogous to the finalized adoption in *Young*. Plaintiffs motion should be granted.

**C. Defendants' "Special Relationship" Futility Arguments Lack Merit.**

Defendants next argues that Plaintiffs' proposed amendment would be futile with regard to Plaintiffs' 42 U.S. Code § 1983 claim. According to Defendant, that is because amendment would not "alter the dispositive fact that Plaintiffs were returned to the physical custody of their biological parents for a trial home visit and that the parents fled the state." Def. Resp. at 8. That is wrong for several reasons.

First, prior to the start of the trial home visit, a special relationship plainly existed between Plaintiffs and Defendants. And equally plainly, as alleged in the Proposed SAC, Defendants breached their duties to Plaintiffs by tricking the abuse & neglect court into allowing the trial home visit to start. As the Tenth Circuit explained:

> The special relationship triggers a continuing duty which is subsequently violated if a state official "knew of the asserted danger to [a foster child] or failed to exercise professional judgment with respect thereto, ... and if an affirmative link to the injuries [the child] suffered can be shown."

*Schwartz v. Booker*, 702 F.3d 573, 580 (10th Cir. 2012). *See also, Yvonne L., By & Through Lewis v. New Mexico Dept. of Human Services*, 959 F.2d 883, 893 (10th Cir. 1992) ("[I]f the persons responsible place children in a foster home or institution that they know or suspect to be dangerous to the children they incur liability if the harm occurs."). The Proposed SAC alleges that, to induce the abuse & neglect court into approving the trial home visit, Defendants:

- Affirmatively misled the court about the father's progress on his treatment plan; Proposed SAC at ¶¶ 111;
- Suppressed the professional opinion of Plaintiffs' caseworker. Proposed SAC at ¶¶ 93-106;
- Buried allegations of physical abuse by Plaintiffs' biological father. Proposed SAC at ¶¶ 68-89.

All these things happened prior to the trial home visit. And as alleged in the Proposed SAC, the trial home visit would not have occurred but for Defendants' misconduct. Proposed SAC at ¶¶ 89.

Second, the Proposed SAC contains allegations that squarely rebut Defendants' claim that the special relationship ended when the trial home visit began. The crux of Defendants' argument, in their Rule 12(b)(6) motion and now, is that "Plaintiffs were not in the physical control of CYFD

5

and were returned to the care of their parents." Def. Resp. at 2. But as the Proposed SAC alleges, no rights were *ever* transferred to Plaintiffs' biological parents—Defendants retained exclusive control over where and with whom Plaintiffs would reside. Proposed SAC at ¶¶ 128, 143-144. And that control was not merely theoretical. Plaintiffs provided a myriad of essential services to Plaintiffs until they were kidnapped. Proposed SAC at ¶ 117. They also staged the apartment to make the father look fit to care for Plaintiffs when he was not, and covertly informed him site visits that were supposed to be unannounced. Proposed SAC at ¶ 118. Finally, Defendants assisted Plaintiffs' kidnapping by blocking the issuance of an Amber Alert. Proposed SAC at ¶¶ 122-25.

Nonetheless, Defendants continue to assert that they are shielded by *DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189 (1989) (cited by Def. Resp. at 8). Yet the differences between the child protective services agency's actions there, and Defendants' actions here, could not be starker. In *DeShaney*, a Joshua Deshaney was taken into state custody for several days, after which "the juvenile court dismissed the child protection case and returned Joshua to the custody of his father." *Id*. at 192. The sole conduct giving rise to the plaintiff's claims occurred after the father's parental rights had been restored, and the agency's rights relinquished:

> For the next six months, the caseworker made monthly visits to the DeShaney home, during which she observed a number of suspicious injuries Joshua's head; she also noticed that he had not been enrolled in school, and that the girlfriend had not moved out. The caseworker dutifully recorded these incidents in her files, along with her continuing suspicions that someone in the DeShaney household was physically abusing Joshua, but she did nothing more.

*Id*. at 192–93. The Supreme Court held that liability could not attach because "the harms Joshua suffered occurred not while he was in the State's custody, but while he was in the custody of his natural father, who was in no sense a state actor. … [T]he State does not become the permanent guarantor of an individual's safety by having once offered him shelter." *Id*. at 201.

By contrast the trial home visit did not transfer custody of Plaintiffs to their biological father. Additionally, and as already discussed, Defendants surreptitiously continued to provide essential services to Plaintiffs to make the abuse & neglect court think their father was a fit parent. They also announced visits that were supposed to be unannounced and blocked an Amber Alert.

6

Defendants may not exercise that level of control over Plaintiffs and then, when their scheme ends in disaster, cast themselves as mere observers.

The Court should also reject Defendants' contention that they cannot be held responsible for their actions because Plaintiffs were only injured *after* they were kidnapped. To be clear: a kidnapping is not akin to the custodial transfer that occurred in *DeShaney*. As with the Tort Claims Act arguments discussed earlier, Defendants simply miss the point.

And to the extent Defendants argue that the kidnapping or the passage of time between the kidnapping and M.B.'s brain injury somehow breaks the causal chain, the Court should reject that argument as well. Issues of proximate causation are generally decided by a jury, not on a Rule 12(6)(b) motion to dismiss. And Defendants' request for dismissal rings especially hollow given the Proposed SAC's allegations that: (1) Plaintiffs' biological father attempted to kidnap them once before (Proposed SAC at ¶ 54); (2) Defendants hoped he would kidnap them after the trial home visit started (Proposed SAC at ¶¶ 92, 164); and (3) Defendants' knowledge that Plaintiffs' father had likely struck them in the head previously (Proposed SAC at ¶¶ 68-89). Plaintiffs motion should be granted.

**D. Defendants' Sur-Reply Argument Lacks Merit.**

Defendants claim that Plaintiffs' motion for leave to amend is a "sur-reply" to the pending Rule 12(b)(6) motion. But as explained above and in the initial motion, the facts alleged by the Proposed SAC are relevant to the purported deficiencies in the operative complaint. Moreover, the Proposed SAC adds an additional claim, and an additional participant in Defendants' scheme against whom Plaintiffs have grounds for redress. Additionally, Defendants' "sur-reply" argument is not a recognized grounds for denial of a motion for leave to amend under Rule 15(a). As the Supreme Court ruled long ago:

> Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded. … If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed undue prejudice to the opposing party by virtue of allowance of the

7

amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'

*Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962). Plaintiffs' motion should be granted.

### E. Conclusion.

For the foregoing reasons, Plaintiffs' motion should be granted.

Respectfully submitted,

**GUBERNICK LAW P.L.L.C.**

/s/ Benjamin Gubernick
BENJAMIN GUBERNICK
New Mexico Bar No. 145006
Ben@gubernicklaw.com
734-678-5169
10720 W. Indian School Rd.
Ste. 19 PMB 12
Phoenix, AZ 85037

---and---

*/s/ Todd J. Bullion*
Todd J. Bullion
Law Office of Todd J. Bullion
4811 Hardware Dr NE
Bldg D, Ste 5
Albuquerque, NM 87109
(505) 452-7674
todd@bullionlaw.com

---and---

*/s/ Robert Gorence*
Robert Gorence
Gorence & Oliveros
300 Central Ave SW, Suite 1000E
Albuquerque, NM 87102
(505) 244-0214
gorence@golaw.us

---and---

        */s/ Jason Bowles*
        Jason Bowles
        Bowles Law Firm
        4811 Hardware Dr NE
        Bldg D, Ste 5
        Albuquerque, NM 87109
        (505) 217-2680
        jason@bowles-lawfirm.com

        *Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 19th day of September, 2022, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

**Alfred A Park**
Park & Associates, LLC
3840 Masthead St., N.E.
Albuquerque, NM 87109
505-246-2805
Fax: 505-246-2806
Email: apark@parklawnm.com

**Lawrence M Marcus**
Park & Associates, LLC
3840 Masthead St. N.E.
Albuquerque, NM 87109
505-246-2805
Fax: 505-246-2806
Email: lmarcus@parklawnm.com

**James J Grubel**
Park & Associates, LLC
3804 Masthead Street NE
Albuquerque, NM 87109
505-246-2805
Fax: 505-246-2806
Email: jgrubel@parklawnm.com

*/s/ Todd J. Bullion*
Todd J. Bullion
Law Office of Todd J. Bullion