**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**ALISON ENDICOTT-QUIÑONES,**
**Guardian ad Litem, on behalf of**
**A. D., R. B., E. B., and M. B.,**
**minor children,**

    **Plaintiffs,**

**vs.**           **No: 21-cv-00368 DHU/JMR**

**PATRICIA GARZA, in her individual**
**and official capacity; REBECCA LIGGETT,**
**in her individual and official capacity; BRENDA**
**SALDANA, in her individual and official capacity;**
**JENNIFER DE LOS SANTOS in her individual and**
**official capacity; NEW MEXICO CHILDREN YOUTH**
** & FAMILIES DEPARTMENT; and DOES 1-50,**

    **Defendants.**

**REBECCA LIGGETT'S MOTION FOR JUDGMENT ON THE PLEADINGS BASED
ON ABSOLUTE IMMUNITY**

   COME NOW New Mexico Children, Youth and Families Department ("CYFD"), Patricia

Garza, Rebecca Liggett, Jennifer De Los Santos, and Brenda Saldana (collectively "Defendants"),

by and through their attorneys, Park & Associates, LLC (Alfred A. Park and James J. Grubel), and

for Rebecca Liggett's Motion for Judgment on the Pleadings Based on Absolute Immunity state

as follows[1]:

**I. FACTUAL AND PROCEDURAL BACKGROUND**

   Plaintiff Alison Endicott-Quinones filed suit on behalf of minors A.D., R.B., E.B., and

M.B. ("Children" or "Plaintiffs") on March 1, 2021.   The Children were removed from their

parents by the local police and placed in the custody of CYFD beginning in June 2019, based on

allegations of neglect when the parents, who are foreign nationals, were observed panhandling in

---

[1] Pursuant to Rule 7.1, Plaintiffs' counsel was contacted and indicated that this Motion is opposed.

the parking lot of a retail establishment. Corrected Second Am. Compl. ("SAC") Doc. 53 at ¶¶19, 26, 31. The Children were then placed in foster care. SAC at ¶35.  Consequently, the parents were ordered to complete a treatment plan before the children would be returned to them. SAC at ¶¶ 39, 43   In April 2020, the Children were sent to live with their parents for a trial home visit.  SAC at ¶114.   In April of 2020[2], the parents fled New Mexico with the Children. SAC at ¶¶ 119, 120.

Defendant Rebecca Liggett is the Chief Children's Court Attorney with CYFD.  SAC ¶97. Plaintiffs assert that Ms. Liggett allegedly ordered a CYFD employee, Ivy Woodward[3], to censor her testimony in a motion hearing regarding allegations as to the parents' readiness for a trial home visit.  Id. at ¶¶ 98, 101.

The lawsuit asserts that Defendants disregarded the constitutional rights and well-being of the Children in "a concerted effort to get rid of their case."  Id. at ¶ 2. Plaintiffs generally assert that the returning the Children to the physical care of their parents, even though a New Mexico Court had found that the parents had adequately completed a parenting plan, violated their rights because CYFD knew or should have known that the parents intended to "kidnap" them.  Count One of the Complaint asserts that the Defendants, including Rebecca Liggett, violated the Plaintiff's' Fourteenth Amendment rights by violating the special relationship they had with Plaintiffs by removing them from foster homes and placing the children back in the care of their biological parents, which allowed the biological parents to flee the state, even though CYFD retained legal custody.  Id. at ¶142.   Count Two of the Complaint alleges that the Defendants, including Ms. Liggett, created a dangerous situation by removing the Children from the safety of a foster parent home to being returned to the home of their biological parents. Id. at ¶¶ 159, 160

---

[2] The records indicate the parents more likely fled in early May.  But that distinction is not important for the purposes of this Motion

[3] Per the Complaint, Ivy Woodward was one of CYFD's permanency planning supervisors.  Compl. at ¶27.

Count Three, which does not name Ms. Liggett, asserts that the other Defendants negligently operated the home of the parents, which permitted the parents to flee. The children allegedly were harmed later by the parents outside of the parents' New Mexico home.

The allegations in the Complaint against Ms. Liggett stem from her position as an attorney for CYFD acting in her role as an advocate in a legal proceeding. The allegations concern Ms. Liggett arranging for the presentation of evidence on the record; specifically, Ms. Woodward's testimony regarding a trial home visit. Accordingly, Ms. Liggett is absolutely immune from suit and all allegations against her should be dismissed because her alleged actions are intimately tied to the judicial process – preparation of a witnesses and presentation of evidence to a tribunal.

## II. ARGUMENT

### A.  STANDARD OF REVIEW FOR MOTION FOR JUDGMENT ON THE PLEADINGS

The instant motion is the equivalent of a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. Rule 12(b)(6). While "[n]ormally a motion to dismiss for failure to state a claim upon which relief can be granted should be made prior to filing the answer or in the answer itself," a defendant can accomplish the same end after an answer is filed by filing a motion for judgment on the pleadings. Jacobsen v. Deseret Book Co., 287 F.3d 936, 941, n.2 (10th Cir. 2002). The standards of review for these two types of motion are identical. Id. When evaluating a motion to dismiss for failure to state a claim or a motion for judgment on the pleadings, the court assumes the truth of all well-pleaded facts in the complaint and draws reasonable inferences therefrom in the light most favorable to the plaintiff. See Dias v. City and County of Denver, 567 F.3d 1169, 1178 (10th Cir. 2009). However, this assumption is inapplicable when the complaint relies on a recital of the elements of a cause of action supported by mere conclusory statements. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In addition, "[t]he court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted" under Rule 8(a)(2). Smith v. United States, 561 F.3d 1090, 1098 (10th Cir.2009) (quotation marks and citation omitted), cert. denied, 130 S.Ct. 1142, 175 L.Ed.2d 973 (2010).

The Supreme Court has clarified the Rule 12 standard, stating that "to withstand a motion to dismiss, a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.' " Id. at 1247 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level," Twombly, 550 U.S. at 555, so that "[t]he allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008).  Under this standard, "a plaintiff must nudge his claims across the line from conceivable to plausible in order to survive a motion to dismiss." Smith, 561 F.3d at 1098. Therefore, a plaintiff must "frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." Robbins, 519 F.3d at 1247 (quoting Twombly, 550 U.S. at 556).

In analyzing the sufficiency of a complaint''s allegations, courts look to two Supreme Court decisions, Twombly and Iqbal, which provide the determinative test for whether a complaint meets the requirements of Federal Rules of Civil Procedure 8(a)(2) and 12(b)(6) for assessing whether it is legally sufficient to state a claim for which relief may be granted. In Twombly, the Supreme Court considered a class action complaint alleging a conspiracy to restrain trade by communication carriers. 550 U.S. at 548-51. As previously noted, it held a complaint's "allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just

speculatively) has a claim for relief." <u>Robbins</u>, 519 F.3d at 1247. The <u>Twombly</u> Court explained

that this "does not impose a probability requirement at the pleading stage," but "calls for enough

fact[s] to raise a reasonable expectation that discovery will reveal evidence of" misconduct

required for relief. <u>Id</u>. at 556. As a result, the Court pointed out the complaint must provide "more

than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action,"

so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"

<u>Id</u>. at 555 (quoting <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986)). It concluded that a "bare

assertion" of the elements required to make a claim is not enough, but a claim needs "some further

factual enhancement" to get it from "possibility" to the requisite "plausibility" required for relief.

<u>Id</u>. at 556-57.

## B. REBECCA LIGGETT IS ENTITLED TO ABSOLUTE IMMUNITY AS THE ALLEGATION IN THE COMPLAINT RELATED TO HER ROLE AS ADVOCATE IN A JUDICIAL PROCEEDING

### 1. <u>Legal Standard for Absolute Immunity for Government Attorneys</u>

Rebecca Liggett, as a government official, is absolutely immune from Section 1983 actions

for damages based upon actions taken in her official capacity in the abuse and neglect proceeding

related to Plaintiffs and their parents in state court because the allegations asserted against her are

based on her functioning as an attorney presenting evidence to a tribunal. "Absolute immunity

defeats a suit at the outset, so long as the official's actions were within the scope of the immunity."

<u>PJ ex rel. Jensen v. Wagner</u>, 603 F.3d 1182, 1195 (10th Cir. 2010) (quoting <u>Spielman v.</u>

<u>Hidlebrand</u>, 873 F.2d 1377, 1381 (10th Cir. 1989)). Absolute immunity protects governmental

officials and employees from personal liability under Section 1983 for the performance of certain

discretionary acts and is "necessary to assure that judges, advocates, and witnesses can perform

their respective functions without harassment or intimidation." <u>Butz v. Economou</u>, 438 U.S. 478,

512, 98 S.Ct. 2894, 2913 (1978); Imbler v. Pachtman, 424 U.S. 409, 430-31, 96 S.Ct. 358, 984, 994-96 (1976). In determining whether a governmental official is entitled to absolute immunity, courts use a "'functional' approach; immunity is justified and defined by the functions it protects and serves, not by the person to whom it attaches." Forrester v. White, 484 U.S. 219, 227, 108 S.Ct. 538 (1988).   Further, absolute immunity attaches to the function, not to the manner in which it is performed. Barrett v. U.S., 798 F.2d 565, 573 (2d Cir. 1986) (questionable or harmful conduct irrelevant).

Using this approach, state prosecutors have been found to be entitled to absolute immunity from suits for damages brought pursuant to Section 1983 for activities "intimately associated with the judicial process." Pfeiffer v. Hartford Fire Ins. Co., 929 F.2d 1484, 1489 (10th Cir. 1991) (quoting Imbler, 424 U.S. at 430-31, 96 S.Ct. at 995-96).

Where a public official participating in the judicial process is sued in collateral proceedings, the focus on the effective functioning of our justice system does not arise from a generalized concern about interfering with the official's duties. Rather, the focus arises from a specific concern about interfering with "conduct closely related to the judicial process." Burns v. Reed, 500 U.S. 478, 493, 111 S. Ct. 1934, 114 L. Ed. 2d 547 (1991).

Thus, the Supreme Court has interpreted Section 1983 to provide absolute immunity for the performance of certain functions "because any lesser degree of immunity could impair the judicial process itself." Malley v. Briggs, 475 U.S. 335, 342, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). Where providing only qualified immunity would fail to ensure the unhindered performance of a public official's duties essential to the proper functioning of that process, a grant of absolute immunity is proper. Imbler, 424 U.S. at 427–28, 96 S.Ct. 984. Today, "[f]unctions that serve as an 'integral part of the judicial process' or that are 'intimately associated with the judicial process'

are absolutely immune from civil suits." <u>Rogers v. O'Donnell</u>, 737 F.3d 1026, 1031 (6th Cir. 2013) (quoting <u>Imbler</u>, 424 U.S. at 430, 96 S.Ct. 984).

Consistent with the functional approach to absolute immunity, such immunity may extend to various participants in a judicial proceeding, including government attorneys. <u>Benavidez v. Howard</u>, 931 F.3d 1225, 1230 (10th Cir. 2019) In 1976, the Supreme Court first recognized a prosecuting attorney's entitlement to absolute immunity in a Section 1983 suit. <u>Imbler</u>, 424 U.S. at 410, 96 S.Ct. 984. Two years later, the Court held that "an agency attorney who arranges for the presentation of evidence on the record in the course of an adjudication is absolutely immune from suits based on the introduction of such evidence." <u>Butz</u>, 438 U.S. at 517, 98 S.Ct. 2894.

The Tenth Circuit subsequently recognized absolute immunity as extending to "government lawyers involved in civil proceedings." <u>Robinson v. Volkswagenwerk</u>, 940 F.2d 1369, 1373 n.4 (10th Cir. 1991); <u>see also</u> <u>Scott</u>, 216 F.3d at 908-10 (holding a county attorney had absolute immunity from a Section 1983 claim arising out of a civil commitment proceeding).   The Tenth Circuit has summarized the rule of absolute immunity as applied to government attorneys charged with violating Section 1983 as follows:

> A government attorney's administrative duties and those investigatory functions that do not closely relate to an advocate's preparation for judicial proceedings are not entitled to absolute immunity. Rather, absolute immunity shields those acts undertaken by a government attorney in preparation for judicial proceedings and which occur in the course of his or her role as an advocate for the government. See <u>Buckley</u>, 509 U.S. at 273, 113 S.Ct. 2606; <u>Mink</u>, 482 F.3d at 1261 (reasoning that the "determinative factor" in the absolute immunity inquiry is "advocacy").

<u>Benavidez v. Howard</u>, 931 F.3d 1225, 1231 (10th Cir. 2019).

2.  <u>The alleged conduct is based on Rebecca Liggett's role as an advocate attorney in an abuse and neglect proceeding</u>

Here, the allegations asserted in the Complaint against Rebecca Liggett revolve around her role as an advocate in an abuse and neglect proceeding in state court related to Plaintiffs and their parents, a role intimately associated with the judicial process.  Specifically, Plaintiffs allege that On March 13, 2020, Woodward received a phone call from Liggett, who was the Chief Children's Court Attorney.  Complt at ¶¶ 96, 97.   "Liggett asked Woodward what she planned to testify to at the hearing. Woodward stated she would testify truthfully about Ducila's inability to control the children, that the children would not be safe from abuse or neglect with Ducila, the children's troubling disclosures, the anger Ducila demonstrated during visits with the children, and that the investigation into the disclosures the children made in therapy was rushed by Garza and De Los Santos and was closed before an adequate investigation could be done."  <u>Id.</u> at ¶98. Accordingly, the focus of the allegations against Ms. Liggett relate to her interactions with Woodward regarding Woodward's testimony at a hearing in the abuse and neglect proceeding.  The following allegations also assert that Liggett was attempting to prepare Woodward for presenting evidence at a hearing.  The Complaint alleges:

99. Liggett told Woodward that her testimony would make it look like CYFD was misleading the court about Ducila's readiness for a trial home visit.

100. Liggett instructed Woodward that she was to refrain from testifying to her own personal or professional opinions and was to instead parrot CYFD's institutional position.

101. Liggett directed Woodward to conceal her professional opinion that placing the children into a trial home visit would be dangerous contrary to the children's interests, even if directly asked to provide her professional opinion in court. Liggett instructed Woodward to respond to any question seeking her professional opinion as follows: CYFD's decision was to engage in a trial home visit.

102. When Woodward said that she would not omit the truth and would answer questions honestly Liggett told Woodward that she would object to Woodward providing her opinion in court.

103. Liggett then stated, "Let me remind you that you are an employee of the State of New Mexico and as such it is your obligation to align and censure [sic] yourself with the needs of the organization that employs you." Woodward replied, "No, ma'am, it is not. Especially when this organization is asking me to lie for them." Liggett became agitated and stated, "nobody told you to lie, I just told you to censure (Sic) yourself so that we are all on the same page." Liggett then stated that she was going to do everything in her power to keep Woodward from taking the stand and that there would be, "no limits" to what she would do to keep her from testifying.

Id. at ¶¶ 99-103.

The facts as alleged make clear that the complained-of conduct, the preparation of a witness and evidence for a motion hearing, are "intimately associated" with the judicial process. Benavidez at 1231. In Benavidez, the Tenth Circuit upheld the dismissal of Section 1983 claims because the allegedly improper conduct was tied to the advocacy function of three city attorneys. There, the plaintiff alleged her First Amendment rights were violated when two City of Albuquerque attorneys filed a motion for protective order in a collateral matter to stop her from harassing the City Clerk. The Tenth Circuit found that the preparation and filing of the motion fell "within the advocacy function of the city attorneys assigned to defend the city clerk against Plaintiffs' § 1983 action." Id.

The Tenth Circuit found that government defense attorneys were entitled to absolute immunity. In making that finding, the Tenth Circuit cited to the cited to the expansion of the doctrine to protect attorneys from having to defend in collateral actions "to achieve the independent judgment and vigorous advocacy vital to the effective functioning of our adversarial system of justice." Id.

The Tenth Circuit relayed that in 1976, the Supreme Court first recognized a prosecuting attorney's entitlement to absolute immunity in a Section 1983 suit. Imbler, 424 U.S. at 410, 96 S.Ct. 984. Two years later, the Supreme Court held that "an agency attorney who arranges for the

9

presentation of evidence on the record in the course of an adjudication is absolutely immune from suits based on the introduction of such evidence." <u>Butz</u>, 438 U.S. at 517, 98 S.Ct. 2894.

Here, according the allegations of the Complaint, Ms. Liggett was an attorney for CYFD and was tasked with preparing Ivy Woodward, a CYFD employee, for giving testimony at a hearing on a motion filed by the guardian ad litem in an abuse and neglect proceeding.[4] Unquestionably the conduct of Ms. Liggett is that of an attorney advocate deciding what evidence should or should not be presented in a judicial proceeding.[5]  To the extent that Plaintiffs assert that Ms. Liggett instructed a witness to lie, which is vehemently denied, that allegation is irrelevant to whether absolute immunity bars the claims asserted against Ms. Liggett.  The central question is whether Ms. Liggett was advocating for CYFD's position.  Even based on the allegations in the Complaint, which skew the evidence and omit key facts, Ms. Liggett was instructing Woodward how to respond to questions about CYFD's position on a trial home visit during a hearing.  SAC at ¶¶ 100, 101.

Further, the Complaint also asserts that Liggett "would object to Woodward providing her opinion in court" SAC at ¶102.  The Complaint attempts to avoid the application of absolute immunity by averring that Ms. Liggett was not the attorney of record on the case.  SAC at ¶97. This allegation is immaterial.  The function of Ms. Liggett as pleaded in the Complaint is that she was preparing a witness for testimony before the state district judge and would be offering objections should the guardian ad litem seek Ms. Woodward's personal opinion.  The activities of

---

[4] The Complaint alleges: "Based on Woodward's concerns, Castillo [GAL] motioned the abuse and neglect court for a hearing, where Woodward would be the sole witness she would call. The purpose of the hearing was to stop the trial home visit from going forward based on Woodward's concerns, the play therapy disclosures, and Garza's "joke" about the parental kidnapping."  Compl. at ¶92.

[5] CYFD does not concede that the nature of the GAL's motion is accurately stated in the Complaint.  Nevertheless, even when assumed to be true, the truth of the allegations are not material to this Motion.

Ms. Liggett were intimately related to the judicial process.  Accordingly, she is entitled to absolute immunity.

    3.   <u>The underlying merit of Ms. Liggett's alleged conduct is irrelevant to whether absolute immunity is implicated</u>

The Supreme Court has acknowledged that "for some 'special functions,' it is better to leave unredressed the wrongs done by dishonest [officials] than to subject those who try to do their duty to the constant dread of retaliation." <u>Burns</u> at 484, 1938. "At the same time, the safeguards built into the judicial process tend to reduce the need for private damages actions as a means of controlling unconstitutional conduct." <u>Benavidez</u> at 1232 (quoting <u>Butz</u>, 438 U.S. at 512, 98 S.Ct. 2894).  The Supreme Court observed that at common law prosecutors were immune from suits for malicious prosecution and for defamation, and that this immunity extended to the <u>knowing use of false testimony</u> before the grand jury and at trial. <u>Burns</u> at 485, 1938 (emphasis added).

Indeed, Justice White, in his concurrence in <u>Imbler v. Pachtman</u>, 424 U.S. 409, 440–41, 96 S. Ct. 984, 1000, 47 L. Ed. 2d 128 (1976) specifically articulated that the use of false testimony, even if knowing, by a prosecutor did not waive absolute immunity.  Justice White stated, "I agree with the majority that history and policy support an absolute immunity for prosecutors from suits based solely on claims that they knew or should have known that the testimony of a witness called by the prosecution was false; and I would not attribute to Congress an intention to remove such immunity in enacting 42 U.S.C. s 1983.  Since the gravamen of the complaint in this case is that the prosecutor knew or should have known that certain testimony of a witness called by him was untrue and since for reasons set forth below the other allegations in the complaint fail to state a cause of action on any other theory, I concur in the judgment in this case." <u>Id</u> at 440-41

Accordingly, even if the Court accepts the false assertion that Ms. Liggett knowingly instructed Ivy Woodward to perjure herself, which is vehemently denied, that is not relevant to whether absolute immunity is implicated.  The Supreme Court has made it clear that the threat too the judicial process by allowing lawsuits against prosecuting attorneys for even knowingly introducing false testimony, is too grave, and therefore, such lawsuits are not permitted.  Moreover, Plaintiff's Complaint is actually alleging that Ms. Liggett instructed Woodward to simply assert CYFD's official position rather than her own opinion and desires.

Plaintiffs' Complaint alleges that Rebecca Liggett told Woodward to limit her testimony in connection with a motion hearing in state court by stating "[l]et me remind you that you are an employee of the State of New Mexico and as such it is your obligation to align and censure [SIC] yourself with the needs of the organization that employs you." SAC at ¶103.  This instruction is not an attempt to suborn perjury.  It is simple witness preparation.  Moreover, it is undisputed that that instruction was related to Ms. Liggett's role as an advocate in a judicial proceeding. Accordingly, pursuant to binding case authority such as Benavidez and Butz, Rebecca Liggett is absolutely immune from suits asserting damages under Section 1983 for her role in securing testimony and preparing a witness to a judicial proceeding, and all claims asserted against her should be dismissed with prejudice.

WHEREFORE, Defendants respectfully pray that the Court enter an order dismissing with prejudice all claims asserted against Rebecca Liggett in Plaintiffs' Corrected Second Amended Complaint (Doc. 53), and for such further relief as the Court deems appropriate.

Respectfully Submitted:

PARK & ASSOCIATES, LLC

By  */s/ James J. Grubel*
Alfred A. Park
James J. Grubel
3840 Masthead Street, N.E.
Albuquerque, NM 87109
505-246-2805 ext. 104
jgrubel@parklawnm.com
*Counsel for Defendants*

I hereby certify that a true and correct
copy of the foregoing was served via
CM/ECF filing system to all counsel
of record on this  14th  day of April 2023.

*/s/ James J. Grubel*
James J Grubel