IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ALISON ENDICOTT-QUIÑONES,
Guardian ad Litem, on behalf of
A. D., R. B., E. B., and M. B.,
minor children,

       Plaintiffs,

vs.                                         No: 21-cv-00368 DHU/JMR

PATRICIA GARZA, in her individual
and official capacity; REBECCA LIGGETT,
in her individual and official capacity; BRENDA
SALDANA, in her individual and official capacity;
JENNIFER DE LOS SANTOS in her individual and
official capacity; NEW MEXICO CHILDREN YOUTH
 & FAMILIES DEPARTMENT; and DOES 1-50,

       Defendants.

## REBECCA LIGGETT'S REPLY IN SUPPORT OF HER MOTION FOR JUDGMENT ON THE PLEADINGS BASED ON ABSOLUTE IMMUNITY

COME NOW New Mexico Children, Youth and Families Department ("CYFD"), Patricia Garza, Rebecca Liggett, Jennifer De Los Santos, and Brenda Saldana (collectively "Defendants"), by and through their attorneys, Park & Associates, LLC (Alfred A. Park and James J. Grubel), and for Rebecca Liggett's Motion for Judgment on the Pleadings Based on Absolute Immunity state as follows:

Plaintiffs' Corrected Response (Doc. 72) to Ms. Liggett's Motion is replete with distraction techniques and red-herring assertions. The Second Amended Complaint ("SAC") is unambiguous that the allegations asserted against Ms. Liggett stem from her preparing Ivy Woodward to testify in a judicial proceeding. Accordingly, she is entitled to absolute immunity. Plaintiffs' assertions that Ms. Liggett also participated in some sort of scheme or conspiracy related to the Plaintiffs is not material because Plaintiffs do not assert a claim for conspiracy. Moreover, Plaintiffs'

assertions are contradictory when they insinuate that Ms. Liggett's actions were improper when she opposed taking Plaintiffs into custody. Failing to take Plaintiffs into custody cannot violate the Plaintiffs' constitutional rights under either the danger creation theory or breach of the special relationship as a matter of law. The facts as pleaded in the SAC make clear that Ms. Liggett was an attorney for CYFD and that the actions from which Plaintiffs' claims stem arise in the preparation of a witness to testify in a judicial proceeding. This is clearly and indisputably tied to the judicial process and Ms. Liggett is, therefore, entitled to absolute immunity.

## I.      ARGUMENT

1. <u>Plaintiffs' assertion that Ms. Liggett not make a formal entry of appearance in the state court action is contradicted by the facts pled in the SAC.</u>

Plaintiffs assert that Ms. Liggett is not entitled to absolute immunity because she never appeared in the civil abuse and neglect case. Doc. 72 at 7. This is an ironic statement as Plaintiffs also recognize that it is nature of the function performed not the identify of the actor who performed it. <u>Id</u>. at 6 *quoting* <u>Malik v Arapahoe Cnty. Dept. of Soc. Servs</u>., 191 F.3d 1303, 1306 (10th Cir 1999). Plaintiffs allege in their Response that Ms. Liggett was a "top lieutenant" of the CYFD cabinet secretary. Doc. 72 at 3. Accordingly, Plaintiffs are focusing on Ms. Liggett's title rather than the activities which they assert give rise to liability.

More significantly, the SAC makes clear that Ms. Liggett's actions at issued involved preparing Ivy Woodward to testify in a motion hearing. Per the facts pled in the case, Ms. Liggett was the Chief Childrens Court Attorney. Doc. 53 at ¶96. "Liggett told Woodward that her testimony would make it look like CYFD was misleading the court about Ducila's readiness for a trial home visit." Doc. 53 at ¶99  Per the Complaint, "Liggett instructed Woodward that she was to refrain from <u>testifying</u> to her own personal or professional opinions and was to instead parrot CYFD's institutional position." Doc, 53. At ¶ 100 (emphasis supplied). Moreover, "Liggett told

2

Woodward that she would <u>object</u> to Woodward providing her opinion in court." *Id*. at ¶102 (emphasis supplied)

The Response ignores these facts and cannot dispute that Ms. Liggett was preparing Ms. Woodward to testify in the state proceeding. Absolute immunity shields those acts undertaken by a government attorney *in preparation for judicial proceedings* and which occur in the course of his or her role as an advocate for the government. See <u>Buckley v. Fitzsimmons</u>, 509 U.S. 259, 273 113 S. Ct. 2606, 125 L. Ed. 2d 209 (1993). Ms. Liggett's activities involved preparation for a judicial proceeding as her role as chief children's court attorney. Her activities were not administrative in nature.

Ms. Liggett was also implicitly going to participate in that hearing herself because she is alleged to have said she would object to Woodwards' testimony. By implication, that objection would have to be presented to the state court in some form. Accordingly, Ms. Liggett was intimately involved in a judicial proceeding and is entitled to qualified immunity. <u>Burns v. Reed</u>, 500 U.S. 478, 493, 111 S. Ct. 1934, 114 L. Ed. 2d 547 (1991).

Moreover, Plaintiffs cite to no authority to support the contention that simply because Ms. Liggett did not enter an appearance in the state litigation she cannot be afforded the protections of absolute immunity. Ms. Liggett's activities and actions were clear advocacy. She was shaping Woodward's testimony to comport with the position of CYFD as to the appropriateness of a trial home visit. Whether Woodward agreed with that position per Ms. Liggett's instructions is immaterial to whether Ms. Liggett was participating in the judicial process by advocating CYFD's position.

> 2. The authority cited by Plaintiffs does not support their contention that Ms. Liggett should be denied absolute immunity.

Plaintiffs cite to Rouse v Stacy, 478 F. App's 945 (6th Cir 2012) for the proposition that Liggett's threatening Woodward with adverse employment action is the equivalent of a prosecutor having a criminal defendant beaten to encourage that criminal defendant to plead guilty. The facts of Rouse were extreme and no such extreme facts exist here. Therefore, the cases are facially distinguishable. Moreover, the prosecutor in Rouse was not engaged in advocacy while Ms. Liggett was advancing her client's argument through her attempts to prepare Woodward to testify. The Sixth Circuit found "[i]t suffices to recognize the obvious: that ordering a beating is not a function normally performed by a prosecutor." Rouse at 954. Further Rouse held that the prosecutor's actions were not part of advocacy, which was critical to determining whether immunity applied.

"The analytical key to prosecutorial immunity ... is advocacy—whether the actions in question are those of an advocate." Spurlock v. Thompson, 330 F.3d 791, 798 (6th Cir. 2003), *See also* Benavidez v. Howard, 931 F.3d 1225, 1231 (10th Cir. 2019)(finding the same). The United States Supreme Court has found that out of court activities, so long as they are related to an attorney's advocacy, are entitled to absolute immunity. "We expressly stated that 'the duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom,' and are nonetheless entitled to absolute immunity. We noted in particular that an out-of-court 'effort to control the presentation of [a] witness' testimony' was entitled to absolute immunity because it was 'fairly within [the prosecutor's] function as an advocate.'" Buckley v. Fitzsimmons, 509 U.S. 259, 272–73, 113 S. Ct. 2606, 2615, 125 L. Ed. 2d 209 (1993) (internal citations omitted). *See also* Pirozak v. Knight,

No. 2:19-CV-499, 2020 WL 1290244, at *5 (S.D. Ohio Mar. 18, 2020) (Prosecutors have absolute immunity for preparation of witnesses for trial)

At the outset, the prosecutor in Rouse was adverse to the criminal defendant.  Here, Woodward was anticipated to testify as to CYFD's position.  She was instructed by Liggett to not offer her own personal opinion as to the appropriateness of the trial home visit, but to state CYFD's position on the matter.  See Doc. 53 at ¶101.  The facts in Rouse were extreme and not related to the prosecutor's function as an advocate  The facts here are not even remotely analogous.  As asserted in the SAC, Ms. Liggett's actions with Ms. Woodward involved shaping testimony to present to the state court during a motion hearing.  Plaintiffs' assertions that threatening Ms. Woodward's job for not agreeing to testify as instructed are not availing, and are not even supported by the allegations in the SAC

Significantly, the SAC does not actually allege that Ms. Liggett ever threatened to have Woodward fired.  Rather, the SAC asserts that Ms. Liggett was going to do everything in her power to keep Woodward from taking the stand and that there would be, "no limits" to what she would do to keep her from testifying.  Doc 53 at ¶ 103.  The Response does not point to any allegation in the SAC where Ms. Liggett threatened Woodward's employment.  Instead, the Response conflates the allegations against Ms. Liggett with those attributed to others.  Indeed, the SAC asserts that CYFD Cabinet Secretary Brian Blalock threatened Woodward with termination if she was insubordinate.  Doc 53 at ¶ 105.  However, Secretary Blalock was not involved in the March 2020 hearing at issue.  Therefore, based on the allegations in the SAC, Ms. Liggett did not threaten Woodward with termination but only to keep Woodward from testifying as to her personal opinions.

Even assuming arguendo that Ms. Liggett threatened to have Woodward fired, that does not alter the fact that as pled in the SAC, Ms. Liggett was attempting to prevail upon Woodward the importance of testifying as to CYFD's position at a hearing on the GAL's motion regarding visitation. The actions of Ms. Liggett were those of an advocate and that is dispositive.

Importantly, during an inquiry into whether a prosecutor's action is in his capacity as an advocate, "it [is] inappropriate [ ] to engage in judicial scrutiny of the motives for the prosecutor's action." Rouse, at 950 *see also* Red Zone 12 LLC v City of Columbus, 758 F. App'x508, 513 ("Whether the prosecutor has an improper motive, acts in bad faith, or even acts in an unquestionably illegal manner is irrelevant."). During a functional analysis, an act does not become less prosecutorial "by virtue of an allegation of malice or corruption of motive." Mireles v. Waco, 502 U.S. 9, 13, 112 S.Ct. 286; *see e.g.,* Cady v. Arenac Cty, 547 F.3d 334, 341 (6th Cir. 2009) (finding a prosecutor entitled to absolute immunity after presenting false evidence at trial); Beckett v. Ford, 384 F. App'x 435, 452 (6th Cir. 2010) (finding a prosecutor entitled to absolute immunity after threatening a witness). Further, "The functional approach asks whether the conduct 'was undertaken in connection with one's duties in functioning as a prosecutor.' ") Skinner v. Govorchin, 463 F.3d 518, 525 (6th Cir. 2006)). The conduct here at issue was witness preparation, allegations of threats to terminate employment notwithstanding.

The prosecutor in Rouse had no authority to order the beating of the criminal defendant. Here, Ms. Liggett was not acting beyond her authority in instructing Woodward to refrain from offering her personal opinion and instead limiting her testimony to be in line with the official position of CYFD, on whose behalf she was testifying. More importantly, preparing a witness is a normal function of an attorney in advocating a position to a court. Having an opponent beaten is not a normal function of an advocate. Accordingly, the actions in Rouse are wholly

6

distinguishable. Ms. Liggett's actions were those of an advocate in a court proceeding and, therefore, are entitled to qualified immunity.

> 3. The SAC does not support claims as to Ms. Liggett for conduct outside of her call with Woodward on March 12, 2020.

The Response asserts that even if Liggett were entitled to absolute immunity for the March 12 call, Liggett's Motion should still be denied because it fails to address any of the other actions defendant engaged in as part of the conspiracy. Doc. 72 at 9. Plaintiffs' claims are without merit because the SAC fails to assert a cause of action based on conspiracy. Indeed, the SAC only contains causes of action based on a danger creation theory, a breach of the special relationship, and state tort claims. Accordingly, Plaintiffs' claims that Ms. Leggett's actions were akin to a conspiracy are irrelevant to the issues at bar.

Additionally, the facts alleged in the SAC do not support a claim against Ms. Liggett. As asserted in Defendants Motion for Summary Judgment [Doc. 68], the SAC fails to state valid claims against any of the Defendants. The Response point to only a limited number of facts to support their claims against Liggett, none of which are legally sufficient.

The Response advances the theory that Ms. Liggett's apprehension in taking Plaintiffs into custody supports that she violated their constitutional rights. However, none of the Defendants, including Ms. Liggett, were constitutionally obligated to remove the Plaintiffs. The Due Process Clause "generally confer[s] no affirmative right to governmental aid, even when such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 196 (1989).

The Response also contends that Liggett was instrumental in tricking the state court judge into removing the biological father's no contact order. Of note, this allegation undercuts the theory that Ms. Liggett had no official role in the state court action. More importantly, however, the allegation is

7

based on Ms. Liggett's role in advocating for CYFD. Whether the motives or methods were proper are not at issue, she is entitled to absolute immunity for such actions as explained above.

Lastly, the allegations as to the issuance of an Amber Alert are a red-herring. First, The SAC asserts that it was Defendants other than Ms. Liggett that refused to report the Plaintiffs missing. Doc. 53 at ¶¶ 122, 123, 125, and 148. Of note, the only allegation in the SAC related to Ms. Liggett and the Amber Alert is that "Liggett stated that she did not know why the department needed to state that they actually wanted the children returned to CYFD." Doc, 53 at ¶ 126. MS. Liggett's inquiry does not rise to the level of constitutional violation. Plaintiffs do not even attempt to explain how this one statement constitutes wrongful conduct. Despite arguments to the contrary in the Response, the only allegations against Ms. Liggett in the SAC that assert allegedly wrongful conduct are centered on Ms. Liggett's interactions with Woodward. Those interactions are protected by absolute immunity.

## II.   CONCLUSION

Rebecca Liggett is entitled to absolute immunity because the allegations in the SAC relate to Ms. Liggett's actions in advocating for CYFD. More specifically, the SAC asserts that Ms. Liggett improperly prepared Ivy Woodward to testify at a hearing on a motion in the underlying state case. Under the functional approach mandated by the United States Supreme Court, actions as an advocate are the central factor in determining whether absolute immunity applies to a government attorney. Witness preparation has been determined to be part of the advocacy process and, therefore, entitled to absolute immunity. Plaintiffs' lawsuit against Ms. Liggett is a collateral attack on her advocacy and must be dismissed based on absolute immunity.

Respectfully Submitted:

PARK & ASSOCIATES, LLC


By */s/ James J. Grubel*
Alfred A. Park
James J. Grubel
3840 Masthead Street, N.E.
Albuquerque, NM 87109
505-246-2805 ext. 104
jgrubel@parklawnm.com
C*ounsel for Defendants*

I hereby certify that a true and correct copy of the foregoing was served via CM/ECF filing system to all counsel of record on this 6th day of June 2023.

*/s/ James J. Grubel*
James J Grubel