**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

ALISON ENDICOTT-QUINONES,
Guardian ad Litem, on behalf of
A.D., R. B., E.B., and M.B.,
minor children.

       Plaintiff,

v.                                                                                          1:21-cv-00368-DHU-JMR

PATRICIA GARZA, in her individual
and official capacity; REBECCA LIGGET,
in her individual and official capacity;
BRENDA SALDANA, in her individual and
official capacity, JENNIFER DE LOS SANTOS,
in her individual and official capacity, the NEW
MEXICO CHILDREN, YOUTH & FAMILY
DEPARTMENT; and DOES 1-50

       Defendant.

<u>**MEMORANDUM OPINION AND ORDER**</u>

This matter comes before the Court on Defendant Rebecca Liggett's Motion for Judgement on the Pleadings Based on Absolute Immunity (Doc. 57). In her amended complaint, Plaintiff Alison Endicott-Quinones ("Plaintiff"), as a Guardian ad Litem on behalf of minor children A.D., R.B., E.B., and M.B. ("children"), asserts 42 U.S.C. § 1983 claims for violations of the Fourth and Fourteenth Amendments, and New Mexico Tort Claims Act ("TCA") claims for breach of duty against the New Mexico Children Youth and Families Department ("CYFD"), individual CYFD employees, and various Does. Among these Defendants, Patricia Liggett ("Liggett") now moves for dismissal of the claims against under a 12(c) motion for judgement on the pleadings. For the reasons set forth below, the Court will GRANT in part and DENY in part the motion.

## I. Factual and Procedural Background

Plaintiff filed a complaint on behalf of the children in state court, and the action was removed on April 22, 2021. *See* Doc. 1 (Notice of Removal). Plaintiff amended her complaint the first time on August 9, 2021. *See* Doc. 21 (Plaintiff's Amended Complaint). Plaintiff then filed an amended complaint on March 14, 2023. *See* Doc. 51 (Plaintiff's Second Amended Complaint). The complaint focused on the interactions between the children, their parents and CYFD. CYFD first encountered the children in June 2019 due to allegations of neglect stemming from witnesses who observed the parents panhandling in a Walmart parking lot in Hobbs, New Mexico. Def.'s Mot. at 1-2, Doc. 57. When they were found by CYFD in the Walmart parking lot on June 3, 2019, the children were all malnourished with severe sunburns. Doc. 51 at 3. Three of them had severe tooth decay. *Id.* One child, E.B., required lifesaving medication, which her parents had been neglecting to give her. *Id.* In the weeks leading up to this period, CYFD had actually received multiple calls on their abuse and neglect hotline about the children, to which CYFD did not respond. Doc. 51 at ¶ 21. Ivy Woodward ("Woodward"), a CYFD permanency planning supervisor, was dispatched to the Walmart parking lot on the night of June 3, 2019. *Id.* at ¶ 27. According to Woodward, the children were clearly abused and neglected, and CYFD had no other choice but to take custody of them. *Id.* Defendant Patricia Garza ("Garza"), a CYFD employee, and Defendant Liggett, who at the time was the Chief Children's Court Attorney, expressed that they did not want CYFD to take the children into custody that night. *Id.* at ¶ 27.

Ultimately, the children were taken into custody after a state district court judge asked the CYFD employees when the abuse and neglect filings would be initiated by them. *Id.* at ¶ 32. Intake at CYFD confirmed that the children had been abused and that the parents, Ducila and Badea, were unfit. *Id.* at ¶ 33. The children with tooth decay required soft food diets and one required surgery.

*Id.* M.B. was suffering severe diaper rash and dehydration while A.D. had abrasions on their face. *Id.* The children had to be kept in CYFD custody because the Fifth Judicial District Attorney's Office filed felony child abuse charges against the parents. *Id.* at ¶ 34. While in CYFD custody, E.B. and A.D. were found to be positive for tuberculosis. *Id.* at ¶ 37. Woodward took the children to be treated in Lubbock, Texas, where doctors informed her that E.B.'s tuberculosis had caused meningitis of the brain. *Id.* at ¶ 38. During sessions with a therapist, the children made allegations that their father physically abused their mother, killed the family dog, physically abused them, and that potentially sexually abused them. *Id.* at ¶ 68-77.

Plaintiff alleges that the children were returned to their family prematurely so that CYFD personnel could reduce their workloads. Doc. 72 at 1 (Plaintiff's Response). The children were returned to their parents for dangerous home visits even though the parents had made no progress on their treatment plan. Doc. 51 at ¶ 43. In order to return the children as quickly as possible, the Defendants allegedly presented false information to state court judges, buried credible evidence about the parents' abuse and used the threat of termination to silence concerned coworkers. *Id.* at 1-2. As a result, the children were kidnapped during a trial home visit. *Id.* at 2. CYFD then allegedly prevented police from issuing an amber alert and refused to turn over records when police executed a search warrant. *Id.* The youngest child was eventually dumped by her mother at a North Carolina hospital with catastrophic brain injuries, which ultimately ended the kidnapping and CYFD's scheme. *Id.* CYFD maintains legal custody over the children. Doc. 51 at 18.

The specific allegations[1] against Defendant Liggett, for which she is seeking absolute immunity, are as follows: Defendant Liggett worked under CYFD's cabinet secretary, who

---

[1] Absolute immunity is a fact-based determination, and therefore the Court has been as thorough as possible with recounting the specific allegations against Defendant Liggett as an individual. The

allegedly pushed an unwritten policy of reducing caseloads by reuniting children with their parents whenever possible. *Id.* She was in the Walmart parking lot the night CYFD took the children into custody, but she "laid down the law," saying that CYFD would not be taking the children that night. *Id.* at ¶ 30. Liggett allegedly supported taking the children into custody until she found out that the parents were undocumented and subject to deportation, which would require CYFD to keep the children indefinitely until they could be placed somewhere permanently. *Id.* at ¶ 31. Liggett, with other CYFD employees, communicated to the abuse and neglect court that the underlying findings of reports about the children being physically abused by their father had been investigated and were found to be unsubstantiated. *Id.* at ¶ 87. These comments were untrue. *Id.* Liggett was the Chief Children's Court Attorney for CYFD and did not handle individual cases or a docket. *Id.* at ¶ 97.

Allegedly, Liggett called Woodward on March 13, 2020, and told her that she should refrain from telling the court her opinion, and instead should relay only the institutional position of CYFD. *Id.* at 101. Liggett told Woodward during that phone call that if Woodward testified to her own professional opinion, it would appear that CYFD was misleading the court about the father's readiness for a home visit. *Id.* Liggett said, "Let me remind you that you are an employee of the State of New Mexico and as such it is your obligation to align and censure yourself with the needs of the organization that employs you." *Id.* at ¶ 103. When Woodward said that she would not lie, Liggett responded "Nobody told you to lie, I just told you to censure yourself so that we are all on the same page." *Id.* Liggett also allegedly told Woodward that there were "no limits" to what she would do to prevent Woodward from testifying. *Id.* at 14. Liggett indicated that

---

Court must, at this stage of the litigation, accept the allegations as true for the purposes of this motion. *See Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1228 (10th Cir. 2012).

Woodward would be fired if she testified truthfully. *Id.* at ¶ 104. Liggett said that due to Coronavirus and the protocols that existed at the time, she would find a way to prevent Woodward from entering the courthouse. *Id.* at 106.

The complaint asserts that Liggett directed the Children's Court attorney assigned to the children's case to misrepresent to the father's criminal defense attorney how much progress he had made. *Id.* at ¶ 111. Liggett induced the father's attorney to make false statements to the judge overseeing the criminal child abuse case. *Id.* at ¶ 113. Liggett, and other CYFD employees, worked together to alter the status quo for the children through a formal legal process to compel the children to engage in a dangerous home visit. *Id.* at ¶ 116. After the children were kidnapped during one such home visit, Liggett learned that one of the social workers she supervised had concealed documents from Hobbs Police Department ("Hobbs PD"), who were looking for the kidnapped children. *Id.* at ¶ 124. She took no action after learning this. *Id.* ¶ 124. Liggett participated in a meeting with Hobbs PD in which law enforcement told Liggett that they could not take action to locate the children, issue warrants, or issue an amber alert because CYFD was refusing to enforce its custodial rights. *Id.* at ¶ 125-6.

On March 14, 2023, Plaintiff filed her Second Amended Complaint, which brings claims under 42 U.S.C. § 1983 for violations of the Fourth and Fourteenth Amendment (under theories of special relationship and state created danger) and under the TCA for breach of duty.[2] On April 14, 2023, Defendant Liggett filed this motion for judgement on the pleadings on behalf of herself only. She is now a retired CYFD employee, being sued in her official and individual capacities. She argues that because, at the time of these allegations, she was an attorney working for a

---

[2] Defendant Liggett is being sued under Section 1983 *only*. The TCA claims apply to other Defendants.

government agency, she is entitled to absolute immunity from Plaintiff's claims and therefore she should be dismissed from this action. *See* Doc. 57.

## II. Legal Standards

Under Federal Rules of Civil Procedure 12(c), a party may move for a judgement on the pleadings once pleadings are closed. Fed. R. Civ. P. 12(c). Rule 12(c) motions are evaluated under the same legal standard as Rule 12(b)(6) motions. *Mock v. T.G. & Y. Stores Co*., 971 F.2d 522, 528 (10th Cir. 1992) ("A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is treated as a motion to dismiss under Fed. R. Civ. P. 12(b)(6)"). Therefore, this Court must accept all facts pleaded by the non-moving party as true and grant the non-moving party all reasonable inferences. *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1228 (10th Cir. 2012). To withstand a motion under the Rule 12 standards, a complaint must contain enough allegations to state a claim to relief that is plausible on its face. *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

In determining whether a particular defendant is entitled to absolute immunity, courts will take a "functional approach which looks to the nature of the function performed, not the identity of the actor who performed it." *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993) (internal citations omitted). The main question is whether the actions of the defendant are "intimately associated with the judicial phase of the [legal] process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). The party asserting absolute immunity bears the burden of establishing that immunity. *Antoine v. Byers & Anderson, Inc*., 508 U.S. 429 (1993). Absolute immunity generally protects government officials and employees from personal liability under Section 1983 suits for the performance of acts which are "necessary to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation." *Butz v. Economou,* 438 U.S. 478, 512 (1978).

### III. Analysis

After reviewing the allegations and case law, the Court has concluded that Defendant Liggett has absolute immunity for some, but not all, of the allegations made against her in Plaintiff's complaint. The parties both focused primarily on the March 13 phone call with regards to Defendant Liggett's potential immunity, so the Court will begin its analysis there, and take the other allegations in turn.

### A) Defendant's motion for absolute immunity is denied with regards to the March 13 phone call.

Defendant argues that the March 13 phone call between Liggett and Woodward was squarely within Liggett's role as an attorney for CYFD and that the allegations surrounding the call "assert that Liggett was attempting to prepare Woodward for presenting evidence at a hearing." Doc. 57 at 8 (Defendant Liggett's Motion for Judgement on the Pleadings). Preparation for a motion hearing is "intimately associated" with the judicial process. *Benavidez v. Howard*, 931 F.3d 1225, 1231 (10th Cir. 2019). In *Benavidez*, the Tenth Circuit expanded the doctrine of absolute immunity to protect government defense attorneys, not just criminal prosecutors. The expansion was meant to prevent attorneys from having to defend themselves in collateral actions and "to achieve the independent judgment and vigorous advocacy vital to the effective functioning of our adversarial system of justice." *Id.* at 1230. Defendant points out that the Supreme Court has held that "an agency attorney who arranges for presentation of evidence on the record in the course of an adjudication is absolutely immune from suits based on the introduction of such evidence." *Butz*, 438 U.S. at 517. Based on this case law, Defendant argues that her conduct on the March 13 phone call was unquestionably the conduct of an attorney advocate deciding what evidence should or should not be presented in a judicial proceeding. Whether or not Liggett was the attorney of record,

or even an attorney who litigates in court regularly, is not relevant to the question of absolute immunity.[3]

Plaintiff argues that absolute immunity does not protect Liggett's actions. Defendant's contention that her conduct was "preparation of a witness and presentation of evidence to a tribunal" is a mischaracterization of Plaintiff's amended complaint. For the March 13 call to be covered by absolute immunity, Liggett would have to prove that the call was "undertaken by a government attorney in preparation for judicial proceedings and … [that it] occur[ed] in the course of his or her role as an advocate for the government." *Benavidez*, 931 F.3d at 1231. Absolute immunity applies to activities like filing a motion and presenting evidence on the record to the trier of fact. *See Butz,* 438 U.S. at 516. Even though there is no clear test for applying absolute immunity, it generally applies to "in-court activities" and does not apply to "out-of-court activities." *Odd v. Malone*, 538 F.3d 202, 210 (3d Cir. 2008) (citing Erwin Chemerinsky, Federal Jurisdiction 525–26 (4th ed.2003).

The single issue before the Court is whether or not Defendant Liggett is entitled to absolute immunity for the actions in the complaint for which she is allegedly responsible. Absolute immunity generally protects government officials and employees for actions performed in their role as a representative of the government so that they may conduct their professional functions

---

[3] Defendant also asserts that the underlying merit or severity of the misconduct allegations is irrelevant to whether absolute immunity applies. *Burns v. Reed,* 500 U.S. 478, 484 (1991) (The Supreme Court has held that "for some 'special functions,' it is better to leave unredressed the wrongs done by dishonest [officials] than to subject those who try to do their duty to the constant dread of retaliations.") The Court does not disagree. However while it is true that the egregiousness of the March 13 allegations is not relevant, the manner in which Defendant Liggett is alleged to have approached Woodward is relevant to the question of whether the action she was taking was within her role as a government attorney engaging in the judicial process. *See, e.g., Odd v. Malone*, 538 F.3d 202, 210 (3d Cir. 2008) (denying immunity to out-of-court activities because there was not an adequate check on their abuse).

"without harassment or intimidation." *Butz,* 438 U.S. at 512. Defendant Liggett bears the burden of showing that her actions are subject to absolute immunity. *Id.* at 506.

The Supreme Court has adopted a "functional" approach to the question of absolute immunity which evaluates at the nature of the action that the party wishes to immunize, rather than the identity of that party. *Buckley*, 509 U.S. at 269 (citing *Forrester v. White,* 484 U.S. 219, 229 (1988). Judges, prosecutors, and other types of government attorneys cannot act with absolute impunity. *See Kalina v. Fletcher*, 522 U.S. 118, 127 (1997) ("[t]he absolute immunity that protects the prosecutor's role as an advocate is not grounded in any special esteem for those who perform these functions, and certainly not from a desire to shield abuses of office." (internal citations omitted)). This means that immunity arises only from "conduct closely related to the judicial process." *Burns,* 500 U.S. at 494. Following the mandate of *Buckley,* the Tenth Circuit has held that "government attorney's administrative duties and those investigatory functions that do not closely relate to an advocate's preparation for judicial proceedings are not entitled to absolute immunity. Rather, absolute immunity shields those acts undertaken by a government attorney in preparation for judicial proceedings *and* which occur in the course of his or her role as an advocate for the government." *Benavidez*, 931 F.3d at 1231. Therefore, the Tenth Circuit has adopted a continuum-based approach, under which the "more distant a function is from the judicial process, the less likely absolute immunity will attach.'" *Mink v. Suthers*, 482 F.3d 1244, 1261 (10th Cir. 2007) (internal citations omitted). The Tenth Circuit has held that this immunity extends beyond prosecutors and judges, to "government lawyers involved in civil proceedings." *Robinson v. Volkswagenwerk,* 940 F.2d 1369, 1373 n.4 (10th Cir. 1991).

Under the two-part test set forth in *Benevidez*, the Court holds that Defendant Liggett is not entitled to absolute immunity for her alleged conduct on the March 13 phone call. The

allegations are that Liggett threatened an employee and attempted to induce perjury. The Court finds that such action was not undertaken in the course of Liggett's role as an advocate for the government in preparation for a judicial proceeding. Her alleged conduct is closer to that of the prosecutor in *Rouse v. Stacy*, 478 F. App'x 945 (6th Cir. 2012). In *Rouse,* a prosecutor allegedly arranged for jail employees to beat a defendant until he pled guilty. The Sixth Circuit was not compelled by the prosecutor's defense that his actions were a part of plea bargaining (a recognized prosecutorial function) because "there are established limits to the application of prosecutorial immunity." *Id.* at 951. *See also Odd*, 538 F.3d at 213 ("we must narrowly define the act at issue. … [A]lmost any action by a prosecutor, including the dispatch of purely administrative tasks, can be said to be in some way related to more central prosecutorial functions." (internal citations omitted)).[4] While Liggett certainly did not physically assault anyone, she is alleged to have used illegal coercion in an attempt to force one of her employees to commit a crime. The phone call occurred "distant[ly]" from the judicial process. *See Mink,* 482 F.3d at 1261. The defense that she was simply preparing a witness for a hearing, albeit in an unconventional and illegal manner, falls flat given the holdings of *Rouse* and *Odd.*

While it is true that the Supreme Court and the Tenth Circuit has upheld prosecutorial immunity for the use of false testimony by prosecutors the circumstances in those were quite different. *See Imbler,* 424 U.S. at 409 (a prosecutor who used false evidence at trial, only discovered *after* trial to be false, was immune from §1983 suits); *Chilcoat v. San Juan Cnty.*, 41

---

[4] Plaintiff insists that because Liggett was not an attorney who regularly practiced for CYFD she is not entitled to immunity. Defendant Liggett never made an appearance on the children's case in court and therefore never submitted herself to the "safeguards built into the judicial process," like being held in contempt, which are the alternatives to civil liability. *See Benavidez,* 931 F.3d at 1232. The Court does not believe it is necessary to conduct this analysis, whether it matters that Liggett was not the attorney of record, because the Court holds that regardless of her role, the alleged conduct is not protected by absolute immunity.

F.4th 1196 (10th Cir. 2022), *cert. denied sub nom. San Juan Cnty., Utah v. Chilcoat*, 143 S. Ct. 1748, 215 L. Ed. 2d 649 (2023) (a prosecutor who lied to a court had immunity because *he was not under oath at the time and therefore did not perjure himself*). In this case, Defendant called an employee who was scheduled to appear before a judge and threatened them that they would lose their job if they did not commit a crime. She did not just use testimony she should have known or suspected to be false (like the prosecutor in *Imbler*); she sought to *create* that false testimony. In his concurrence in *Imbler,* Justice White carefully outlined how the majority opinion was not intended to immunize a prosecutor who *knowingly* used perjured testimony. Unlike the prosecutor in *Chilcoat,* the testimony would have been under oath, and therefore would have constituted perjury.

The Court finds the allegations against Liggett to be more consistent with cases in which the Tenth Circuit denied absolute immunity to government attorneys. *See Snell v. Tunnell,* 920 F.2d 673 (10th Cir. 1990) (denying social workers absolute immunity for their role in removing children from a shelter); *See also Kalina*, 522 U.S. at 118 (denying absolute immunity to a prosecutor who lied when she signed an affidavit). Additionally, Liggett's alleged conduct was more administrative in nature (controlling a subordinate's action), than judicial (she herself was not calling witnesses and conducting cross examination). *See Van de Kamp v. Goldstein*, 555 U.S. 335, 342 (2009) ("absolute immunity may not apply when a prosecutor is not acting as an officer of the court, but is instead engaged in other tasks, say, investigative or administrative tasks." (internal citations omitted)). Defendant has provided the Court with no case law that would justify giving Liggett absolute immunity for the March 13 phone call in which she allegedly attempted to induce perjury.

The Court is not making any comments about the accuracy of the allegations against Defendant Liggett. The allegations against Liggett might be without merit. However, at this stage of the legal proceedings, the Court must accept all of Plaintiff's allegations as true. *Colony Ins. Co. v. Burke,* 698 F.3d at 1228.

**B) Defendant Liggett's motion for absolute immunity is granted with regards to two of the allegations made against her in Plaintiff's complaint.**

Defendant Liggett has absolute immunity for the following actions: communications made to the abuse and neglect court *by her* which were allegedly fraudulent (Doc. 51 at ¶ 87) and altering the status quo for the children through a formal legal process to compel the children to engage in a dangerous home visit (*Id.* at ¶ 116). These two allegations were actions undertaken by a government attorney in preparation for legal proceedings, and they occurred within her role as an advocate for the government.[5] Plaintiff has provided no further argument for why these actions in particular are not protected by absolute immunity and therefore the Court will not construct the argument for her. *See Milton v. Daniels*, 521 F. App'x 664, 668 (10th Cir. 2013) (district courts are not required to comb through "filings to find legal nuggets to support" a party's position); *See also United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir.1991) (per curiam) ("Judges are not like pigs, hunting for truffles buried in briefs.").

**C) Defendant Liggett's motion for absolute immunity is denied with regards to the remaining allegations made against her in the complaint.**

Defendant Liggett does not have absolute immunity for the other allegations in the complaint. Those allegations being: her insistence in the Walmart parking lot that CYFD would

---

[5] Defendant Liggett was not under oath as a witness when she appeared in court as an attorney, and therefore she was not committing a crime (perjury) if the allegations are true and she lied to a judge. While it might violate her professional oaths to deny a court candor, it is protected by absolute immunity. *See Chilcoat,* 41 F.4th at 1196.

not be taking the children (Doc. 51 at ¶ 30), Liggett's directing of the children's court attorney to misrepresent to the father's attorney how much progress he had made (*Id.* at ¶ 111), her inducement of the father's attorney to make false statements to the judge overseeing the criminal child abuse case (*Id.* at ¶ 113), Liggett's refusal to turn over documents to Hobbs PD (*Id.* at ¶ 124), and her participation in the Hobbs PD meeting where CYFD refused to enforce its custodial rights (*Id.* at ¶ 125-6). While Defendant Liggett may have been undertaking those actions while she was an advocate for the government, none of those actions were undertaken for a judicial proceeding in the course of *her* role as an advocate for the government.[6]

### V. Conclusion

Defendant Liggett is entitled to absolute immunity for two of the allegations present in Plaintiff's complaint as outlined above. After removing these immunized actions from the complaint, Plaintiff still has viable claims that Liggett violated the children's Fourth and Fourteenth Amendment rights and is subject to Section 1983 claims. Due to these remaining allegations, the case will not be dismissed in its entirety against Defendant Liggett. **THEREFORE**, Defendant's motion (**Doc. 57**) is **GRANTED** in part and **DENIED** in part.

**IT IS SO ORDERED.**

_____
HON. DAVID HERRERA URIAS
UNITED STATES DISTRICT JUDGE

---

[6] The Court is aware that the allegations concerning the father's lawyer were concerning a criminal court proceeding. However, that was not a proceeding in which Liggett *herself* was representing the government and therefore she cannot claim absolute immunity for those allegations.